ROGER EMMET JOHNSON, A MINOR, BY EMMET LEROY JOHNSON, HIS FATHER AND NATURAL GUARDIAN, AND ANOTHER v. CLEMENT F. SCULLEY CONSTRUCTION COMPANY AND ANOTHER.

95 N. W. (2d) 409.

March 6, 1959—No. 37,574.

[redacted]

*Brenner & Schnell,* for appellants.

*Randall, Smith & Blomquist,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying defendants' motions for judgments notwithstanding the verdict or for a new trial.

One action was for personal injuries to Roger Emmet Johnson and was brought by his father and natural guardian, Emmet Leroy Johnson, and the other action was for medical and hospital expenses incurred by the father. The injuries were alleged to have been caused by the negligence of defendants, Clement F. Sculley Construction Company and Walter D. Giertsen Company, which resulted in an accident in Minneapolis on July 21, 1952. The jury returned verdicts in favor of Roger for $45,000 and in favor of Emmet for $6,165.

Defendants were engaged in the construction of the Cedar-Franklin project in south Minneapolis during the years 1950, 1951, and 1952. A Rex paving machine was first brought to the project site in the spring of 1951 as a standby unit for use in the event that ready-mixed concrete should not be available, but it was never used on the project. About a year before the accident happened, the machine was moved to an area of the right-of-way where it would not get in the way of the remaining work. The new site was next to the intersection of two public alleys. South of the east-west alley was a residential district with many children. The machine remained in this location until the job was completed in the fall of 1952. It had many levers, controls, and other items of equipment, and it became a center of play for children in the neighborhood, particularly boys.

During the spring and early summer of 1952, the children discovered gasoline in the tank and thereafter used the gasoline for various games, fires, and other forms of entertainment. At first the gas was obtained through the opening on the top of the tank by using baby food cans attached to sticks, and other methods. For a period of time shortly before the accident, the level of the gasoline in the tank became so low that some boys broke the gasoline line below the tank and took out gasoline through this line. The gasoline they did not use was put in cans and mason jars and stored underneath the machine. There was testimony by defendants' watchman that he saw as many as 10 to 20 children playing on or around the machine on a number of occasions. One witness, Michael Oker, age 13 at the time of the accident, said in his deposition, taken when he was 17 years old, that he had noticed workmen around when boys were playing with gasoline and recalled an incident when two workmen on a bulldozer coming by on a nearby lane of the highway stopped "a second" and looked while the witness and some other boys were throwing "jellie bombs" at the machine. These bombs were made by pouring some of the gasoline into a bottle and inserting a paper wick in the neck of the bottle. The wick was ignited and when the bottle broke against the machine the gasoline would ignite into a large flame. The witness said the workmen made some remarks but were not scolding them.

On the evening of July 21, 1952, Roger Johnson, then 6 years old,

joined Dennis Roll and Michael Oker in a "weiner roast" in Dennis Roll's back yard. Dennis and Michael had started a fire but, since it was not burning strong enough, Michael decided to get some of the gasoline from the paving machine to use to help the fire along. He went to the machine about a half block away and found some gasoline in a coffee can. While returning with this gasoline and some branches, he tripped as he got near the fire, spilling the gasoline on Roger and also on the fire. The gasoline on Roger caught on fire and he was severely burned.

Michael had played on the machine on numerous occasions, and for several months prior to the date of this accident had taken gasoline out of the tank many times. He had used the gasoline to start fires and to make "jellie bombs," torches, etc., and he admitted that at the time of this accident he intended to use the gasoline to build up the fire. Seven boys ranging in ages from 10 to 15 years, all of whom played around the machine prior to the accident, testified that they took gasoline from the tank on numerous occasions and were familiar with its properties and its reaction when near a fire.

There was testimony that the intake opening of the machine was located on a platform at a convenient level for a boy standing alongside the machine. The covering to the opening was a round metal cap, not screwed or affixed to the opening in any way but held in place only by its weight. It appears that the boys merely had to lift it off to expose the intake opening. The intake pipe was vertical, going straight down to the gasoline without any turns.

The questions raised on appeal are: (1) Did the evidence present a jury issue as to negligence on the part of the defendants? (2) Did the evidence establish as a matter of law that the act of Michael Oker was an efficient intervening cause? (3) Were the damages awarded Roger excessive, as not justified by the evidence, or appearing to have been given under the influence of passion and prejudice? The district court answered the first question in the affirmative and the other two in the negative.

■ We must say at the outset that the applicable principles of law which govern cases of this type are set forth in Restatement, Torts, § 339, as follows:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

The rule was adopted by this court in Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194, and has become so well established in this state that we shall not attempt to set forth all of our cases following the rule since that time. See, Davies v. Land O' Lakes Racing Assn. 244 Minn. 248, 69 N. W. (2d) 642, and cases cited therein. See, also, 32 Minn. L. Rev. 526.

As stated in Davies v. Land O' Lakes Racing Assn. *supra,* it was made clear in the Gimmestad case that this court at that time had reached a point where the phrase "attractive nuisance" indicated no special departure or exception from the ordinary run of negligence cases. The phrase had previously been used as a convenient expression to designate one type of case within the ordinary rule that one is liable for injuries resulting to another from failure to exercise the care due and required by the circumstances. This rule is all that is needed to support the proposition that one who maintains an artificial condition is liable for resulting injury to young children trespassing thereon if the possessor of the land comes within the conditions set forth in Restatement, Torts, § 339.

■ It is undisputed that under our decisions in order to recover plaintiff must prove the existence of these four conditions. Doren v. Northwestern Baptist Hospital Assn. 240 Minn. 181, 60 N. W. (2d)

361, 42 A. L. R. (2d) 921. Where proof has failed as to any one of them we have denied recovery. Meagher v. Hirt, 232 Minn. 336, 45 N. W. (2d) 563. In arguing whether the evidence was insufficient as a matter of law to support the jury's finding of negligence, defendants contend that before the restatement rule can be put into effect the plaintiffs must establish that the trespassers were young children. In this respect they state that the "young child" they are referring to in the instant case is not plaintiff Roger but rather Michael Oker, the boy who stumbled with the gasoline that ignited on Roger. They claim that plaintiff failed to establish that Michael was a "young child" at the time of the accident as required for application of the restatement rule. They argue that Michael was 13 years of age and apparently of normal intelligence when the accident happened; that his testimony clearly demonstrated that he knew and understood the inflammable quality of gasoline; and that he was not a "young child" within the meaning of the rule.

We recognize that there is no sharp dividing line as to just what age minors cease to be "young children" as the term is referred to in the restatement rule—neither does the rule itself define what is meant by "young children." It is common knowledge, however, that children are not alike at any given age with reference to mentality, intelligence, and maturity, even though it is true those qualifications are usually measured to some extent at least by age. The term "child" has a well-understood meaning with most people which indicates infancy, minority, or the early years of life. It has been used to denote persons under the age of 21 years as distinguished from adults, a young person at any age less than maturity. 14 C. J. S., Child, p. 1109.

Defendants cite E. I. Du Pont De Nemours & Co. v. Edgerton (8 Cir.) 231 F. (2d) 430, and Warning v. Kanabec County Co-op. Oil Assn. 231 Minn. 293, 42 N. W. (2d) 881, in connection with their contention that the "young children" requirement is not satisfied in the instant case. Only the Du Pont case involved the "attractive nuisance" doctrine. That case considered two boys over 17 years of age, one of whom was injured by the explosion of a dynamite cap claimed to have been found by the other when he rummaged through a household dump on the property where defendant maintained a

powder magazine. The complaint alleged an attractive nuisance in the dump although the explosion in which plaintiff was injured occurred some weeks later at the home of the other boy when they tried by various means to set off or detonate the cap. The jury returned a verdict for the plaintiff, and, upon appeal, the United States Court of Appeals reversed the judgment and ordered the case dismissed on the merits. In discussing the question as to when a minor child ceased to be a child, the court stated that there was a presumption that a boy of 14 is sui juris so as to be chargeable with contributory negligence. It is further stated in that case that plaintiff and his companion were intelligent boys, over 17 years old, about to graduate from high school; that the plaintiff knew that what his companion had found was a dynamite cap; that they both knew it was an explosive; and that their actions clearly indicated when they undertook to explode it that they knew it had not been exploded. The Warning case involved the question of contributory negligence of a 10½-year-old boy killed in a collision with a truck. While it is true that both the Du Pont and Warning cases discussed a child or children, neither of them attempted to say definitely at what age a child ceases to be "young."

Plaintiff cites Ekdahl v. Minnesota Utilities Co. 203 Minn. 374, 281 N. W. 517 (decided after our adoption of the rule), involving an attractive nuisance and a boy almost 15 years old. Defendant argues that the Ekdahl case is distinguishable in that it dealt with an electrocution caused by a highly deceptive instrumentality and is in no way comparable with the fact situation here. While we agree that the Ekdahl case is distinguishable on its facts, the court said there with reference to age and youth (203 Minn. 380, 281 N. W. 521):

"* * * We do not believe courts should set the age limit at which, as a matter of law, an attractive nuisance ceases to allure a youth. It depends a great deal upon what the contrivance is, where located, and the development and understanding of the youth or child involved. Rightly the court declined to direct a verdict for defendant and did not err when refusing it judgment notwithstanding the verdict."

It is our opinion under the record here that the question as to whether there was the required youth for application of the restatement rule was

one for determination by the jury.

■ Defendants further contend that plaintiffs failed to establish that the injury was caused by a structure or other artificial condition which the defendants maintained on the land. In this connection they cite Gallagher v. Frederick, 366 Pa. 450, 77 A. (2d) 427, where the action was brought by the father of a minor who was burned by flames from a bonfire on a lot owned by defendants. It appeared that the defendants stored on the lot a large amount of lumber which had been salvaged from a burned building. The children of the neighborhood, ranging in age from approximately 3 to 15 years, used the lot and frequently built fires, using bits of the charred lumber for that purpose. The day of the accident some older children built a bonfire and the clothing of the minor plaintiff, then about 3 years of age, caught on fire. It appeared in that case that the defendants had knowledge that children were getting hurt on the lot. However, that knowledge was confined to complaints registered as to injuries resulting from the physical condition of the material maintained on the lot. The defendants had no actual knowledge of the fires, but only constructive knowledge as a resident of the neighborhood. At the close of plaintiffs' case, the trial court entered a compulsory nonsuit. On appeal, the Supreme Court of Pennsylvania held that the evidence adduced by the plaintiffs did not bring the case within Restatement, Torts, § 339. The court said there that the artificial condition on an owner's land on account of which he may be held liable for injury to trespassing children is such as he creates or maintains. It took the position that the defendants could not rightly be thought of as having maintained sporadic fires on their land, started by trespassing children, to the detriment of the owners' goods or property. In this regard the court stated (366 Pa. 455, 77 A. [2d] 429):

"* * * the rule was not intended to impose upon an owner of land the duty of policing the conduct of trespassing young children against dangers of their own creation and *not related to or inhering in the artificial conditions which the owner maintains* upon his land."

Following the reasoning in that case the defendants urge in the instant case that it is admitted that Michael Oker and others built the fire which resulted in the injury to the plaintiff; that a fire was not built

on the premises occupied by the defendant; and that, as stated in the Gallagher case, the rule of the restatement was not intended to impose upon an owner of land the duty of policing the conduct of trespassing young children against dangers of their own creation. We are of the opinion that the Gallagher case is distinguishable from the instant case. There the rationale appears to be that the fire which caused the injury was created by the children and *did not relate to or inhere in the maintenance of charred wood* and other materials on the defendants' property. It is our opinion that in the instant case the fire which caused the injury was related to and did inhere in the maintenance of gasoline on the defendants' premises. The difference between the inflammable characteristics of gasoline and wood is well known. Further, the evidence relative to notice on the part of the defendants makes the cases distinguishable. In the instant case the jury could have found that the defendants knew or should have known of the children's activities with the machine and gasoline over a considerable period of time, whereas in the Gallagher case the defendants had only constructive notice.

■ Defendants further argue that even assuming that the plaintiffs had sufficient evidence to invoke the rule initially, nevertheless they failed to show under Restatement, Torts, § 339, that:

"(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, * * *."

Defendants cite as controlling Dahl v. Valley Dredging Co. 125 Minn. 90, 145 N. W. 796, 52 L.R.A. (N.S.) 1173, where naphtha was taken by boys from an engineroom near a dredge left unattended during the dinner hour. It appears that the naphtha had been kept in a can in the engineroom for the purpose of priming the engine. The naphtha was poured on a fire and it flared up and burned the boys. A jury verdict for the plaintiff was reversed and judgment was entered for the defendant. The naphtha had been kept in a proper receptacle where it was convenient for use as occasion required in priming the engine. In that case the court stated (125 Minn. 95, 145 N. W. 798):

"* * * Such articles as gasolene, naphtha, and kerosene may unquestionably be so negligently kept as to give rise to a cause of action.

But when they are kept in a proper receptacle, at a place where it is proper for them to be, and where there is no reason to anticipate that they will be meddled with, the failure so to guard them that trespassing children cannot get possession of them is not, alone, and in itself, sufficient to create a liability."

The Dahl case was decided prior to the acceptance of Restatement, Torts, § 339, in Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194. If the Dahl case was decided on the grounds that the naphtha did not constitute an "attractive nuisance," it is not pertinent in view of the statement in the Gimmestad case to the effect that that element is no longer a prerequisite to liability. Assuming the converse, i. e., that the situation in the Dahl case did constitute an "attractive nuisance," it is distinguishable from the instant case on the facts. There the naphtha was being used periodically to start the engine whereas in the instant case the record indicates that the Rex paving machine was never used on the project from the spring of 1951 until the accident occurred. Furthermore, in the Dahl case it did not appear that anyone had ever previously meddled with the container or that the defendant had any reason to anticipate that these children or anyone else might do so whereas in the instant case a jury could have found from the evidence that the defendants, through their agents or employees, knew that the children had been playing with gasoline near the machine. Thus, we conclude that the Dahl case is not controlling.

We recognize that to leave gasoline in its proper container connected to the machine, for its operation, may not in all cases result in a condition which the possessor knows or should know involves an unreasonable risk of death or bodily harm to children. However, in the instant case, in view of the duration of time that the paving machine was left without being used and the period of time in which children were known to have played on or about the machine, a jury could properly have found that under these facts the defendants knew, or should have known, that this involved an unreasonable risk of death or bodily harm to such children.

■ Defendants further contend that the plaintiffs failed to show, as required under Restatement, Torts, § 339(c), that:

"the children because of their youth do not discover the condition or

realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, * * *."

Under Restatement, Torts, § 339, *comment e,* it is stated that a possessor is not subject to liability to a child who in fact discovers the condition and appreciates the *full risk* involved. See, also, Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091. The knowledge of the inflammable characteristic of gasoline may not have been sufficient to constitute a realization of the full extent of the risk involved. The age and understanding of the child would have a bearing on this question, and the jury could have found that Michael Oker did not appreciate the full extent of the risk involved.

■ Defendants next claim that even assuming their negligence was properly for the jury it was not the proximate cause of the injury because of the efficient intervening cause of Michael Oker in taking the gasoline and causing it to spill on the fire, thereby injuring the plaintiff. The rule with respect to the effects of foreseeability upon the intervention of an efficient cause, relieving the defendant of liability, is stated in 13 Dunnell, Dig. (3 ed.) § 7005(6), and reads in part as follows:

"The causal connection is broken by the intervention of an efficient cause which could not reasonably have been foreseen. The causal connection is not broken by intervening negligence of another person which might reasonably have been foreseen. The foreseeability of intervening causes is to be determined as of the time of defendant's acts or omissions. An intervening criminal act will break the causal connection if it could not reasonably have been foreseen, but it will not break the causal connection if it might reasonably have been foreseen. Where harmful consequences are brought about by intervening and independent forces the operation of which might reasonably have been foreseen, there is no break in the chain of causation of such a character as to relieve the actor from liability. * * * A very common intervening act of a human being which is normally foreseeable is that if explosives or firearms or other dangerous things are left around places where children frequent, a child will play with them and harm himself or others thereby. * * * Where occurrence of intervening cause may be reasonably anticipated, such intervening cause will not interrupt the causation between the

original cause and the injury so as to absolve the original wrongdoer."

The foreseeability of intervening causes is properly a question for the jury. Vills v. City of Cloquet, 119 Minn. 277, 138 N. W. 33. In the instant case, in view of the duration of the time in which the children had played about the machine and the evidence respecting their activities with the gasoline, the jury could have found that the acts of Michael Oker which led to the injury of the plaintiff were acts reasonably to be foreseen by the defendants.

■ Defendants further contend that the damages for pain and suffering and future disability awarded by the jury in the amount of $45,000 are excessive, as being given under the influence of passion and prejudice and as not justified by the evidence. They concede that the record is barren of any indication of passion or prejudice. However, they contend that because the plaintiff Roger was allowed to disrobe at the trial and colored pictures were shown which demonstrated the condition of the burned areas immediately following the accident these circumstances incited passion and prejudice.

It is common practice to allow plaintiff in a personal injury action to exhibit his person to the jury to show the nature of his injuries. Such exhibition is within the discretion of the trial court. We see no abuse of that discretion from the record here. See, 7 Dunnell, Dig. (3 ed.) § 3257, and cases cited therein.

■ With reference to the pictures we stated in Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091, that it is well settled that photographs are admissible in personal injury actions to show the existence and nature of the injuries providing they are relevant and accurately portray the injuries at the time the photographs were taken. In that case colored photographs taken three months after the accident were held to be clearly relevant in showing the plaintiff's condition as bearing upon the extent of her pain and suffering. There, the photographs did not give false impressions of disability or of pain and suffering endured. In the instant case there is no indication that such false impressions were created.

■ Where it is contended that the verdict is not justified by the evidence, the peculiar facts of each case must serve to measure the

damages. Cameron v. Evans, 241 Minn. 200, 62 N. W. (2d) 793. In the instant case as a result of his burns Roger spent a period of 3½ months in the hospital. He is permanently scarred on both legs and feet below the knees, a large area of the left side of his face and neck, his chest, and left shoulder. For a period of 3 or 4 days immediately following the accident, he was near death. Up to the time of the trial he had undergone four operations and future ones are in prospect. The dressings had to be changed under anesthetic because of the pain caused by their removal. During the first 16 days he had to be attended during the entire 24 hours each day. Large formations of scar tissue will remain on the left face and neck for the remainder of his life. There is indication that the scar tissue, being unable to perform the functions of normal skin, will break down and develop sores, particularly with reference to the right foot. This will necessitate further skin grafting and immobilization. Generally, the evidence indicating the pain and suffering endured by Roger, his life expectancy, the long period of hospitalization and convalescence, the nature, extent, and location of the permanent disfigurement, and the future complications resulting from the scar tissue are sufficient to justify a substantial verdict.

Under the facts of this case we cannot say that the trial court abused its discretion in refusing to grant a new trial on the grounds that the verdict was not sustained by the evidence or was the result of passion and prejudice.

Affirmed.