ANNA HESTAD, EXECUTRIX OF THE ESTATE OF ALERT ONA, v. PENNSYLVANIA LIFE INSURANCE COMPANY.

204 N. W. 2d 433.

February 9, 1973—No. 43540.

*Padden, Dickel, Johannson & Wall* and *Kenneth Johannson,* for appellant.

*Wurst, McDowell & Myster* and *Robert A. Wurst,* for respondent.

Heard before Knutson, C. J., and Otis, Todd, and Olson, JJ.

TODD, JUSTICE.

Defendant appeals from an order denying its alternative motion for judgment notwithstanding the verdict or a new trial following a jury verdict determining that defendant was obli-

gated to pay insurance benefits under its policy. Defendant had claimed that the insured's death was by suicide and that it was therefore not obligated to pay under the terms of the policy. Defendant alleges that the trial court erred in excluding a medical opinion of the deputy coroner that death was by suicide and not accidental and also in excluding an opinion of the county sheriff on the same issue. Defendant further contends that the evidence does not justify the verdict. We affirm.

Decedent, Alert Ona, was a 46-year-old bachelor farmer who farmed 480 acres of land just outside Thief River Falls, Minnesota. He purchased a life insurance policy from defendant company in the amount of $3,750, payable in the event of his death by accidental bodily injury. The terms of the policy specifically excluded payment in the event of death by suicide. At approximately noon on January 10, 1970, decedent had placed a call to the home of a neighbor, Kenneth Carlson, requesting his help in repairing a tractor at about 3 o'clock in the afternoon. Mr. Carlson prepared to go to the decedent's farm, which was adjacent to his, and was planning to ride a horse that he owned. However, after going a short distance, he turned back because, he testified, it was so windy that the horse was balky from the wind and cold weather. He then drove to decedent's farm and upon alighting from his car proceeded toward the barn area. As he passed the garage, he heard an engine running. When he opened the side door of the garage, he observed that the garage was full of exhaust fumes and that the overhead door was down. He opened the overhead door and attempted to reach the car, but was driven back by the fumes. He then went home, called the sheriff, and returned to decedent's farm. The sheriff and Dr. A. F. Scheuneman, a deputy county coroner, arrived shortly and the coroner determined that Mr. Ona was deceased. After turning off the engine, the men pushed the vehicle out of the garage in order to remove the body.

The testimony indicates that the car doors and windows were shut, that the hood of the car was open, and there was no hose

or tubing from the exhaust to the interior of the car. The testimony indicated the car was idling faster than normal and that decedent's foot was pressing to some extent on the accelerator. The car was subsequently examined, and it was determined that the automatic choke would not release, causing the car to idle faster, that the piston rings and valve lifters were defective, and that the exhaust system was faulty and leaking just below the rear seat of the car.

There was testimony that on at least two separate occasions the overhead door had been blown shut by strong winds. Examination of decedent's personal effects in the house disclosed no suicide note, but rather indicated that he was preparing his income tax estimate due on January 15. Further, the evidence showed that before noon of that day he had mailed payment of a bill and a census report on his farming operation. Other evidence disclosed that decedent had been at a party 8 days prior to his death and had been jovial and joined in group singing.

There was further testimony that the previous summer decedent had suffered some stomach disorders requiring medication and that he was somewhat disturbed because of this. However, other testimony indicated that the medicine was effective and decedent was apparently enjoying reasonably good health at the time of his death. There was no indication of any suicidal manifestations by decedent. The trial court excluded testimony that decedent's brother had committed suicide some years previously.

Defendant sought to introduce an opinion and made an offer of proof that the coroner would testify that the cause of death, carbon monoxide poisoning, was brought about by suicide and was not accidental. There was also an attempt to solicit such testimony from the sheriff, but no offer of proof was made, and the trial court refused to allow the opinions in evidence. The jury returned a verdict in favor of plaintiff. Based on the instructions of the trial court, the general verdict was a finding that the death was accidental and not suicidal.

The admission of an expert's opinion is normally within

the discretion of the trial court, and the reviewing court will not reverse unless there is an apparent error. Teslow v. Minneapolis-Honeywell Regulator Co. 273 Minn. 309, 141 N. W. 2d 507 (1966). In this case, the trial court excluded the medical opinion of the deputy county coroner on the basis that he was not possessed of any knowledge superior to that of the jury; he was not qualified to state an opinion as to the state of the mind of the deceased prior to death because he had no specific psychiatric training; and no foundation had been laid for such testimony. Furthermore, it was admitted that part of the deputy coroner's opinion which was offered would be based on information received from the sheriff. The doctor had made only a cursory investigation of the scene and circumstances surrounding the death.

Even if we assume the coroner was qualified to state his opinion, such an opinion on the manner of death is improper under Minnesota law. We have held that death certificates are not admissible to show the manner in which the death occurs, such as by accident or suicide, but may be admitted only to show the immediate cause of death, which, in this case, was carbon monoxide poisoning. Statements as to the manner of death in a death certificate constitute conclusions and hearsay. Engel v. Starry, 268 Minn. 252, 128 N. W. 2d 874 (1964).

Defendant urges that even though the death certificate is not admissible, testimony of the deputy coroner who prepared it is admissible regarding his conclusions. We have held that an expert opinion is not inadmissible merely because it embraces the ultimate issue for the jury if the expert possesses peculiar skill and knowledge not held by laymen. Berg v. Ullevig, 244 Minn. 390, 70 N. W. 2d 133 (1955). However, an expert must be more capable of reaching a correct conclusion and be of some assistance to the jury or his opinion is inadmissible. As stated in Carmody v. Aho, 251 Minn. 19, 24, 86 N. W. 2d 692, 696 (1957):

"Where the opinion is not based on the application of any special skill, learning, or experience but is simply the judgment of

the expert based on facts or assumptions equally available to the jury and understandable by them, the opinion of such expert is not admissible. Opinion evidence of an expert is not admissible simply because he is an expert in some field or another, but it is admissible, if at all, for the reason that his special knowledge and skill may be of assistance to the jury in arriving at a correct conclusion where the subject matter is of such a nature that the jury ordinarily would be unable to do so as well as the expert. On the other hand, where the subject matter is of such a nature that it ordinarily would lie within the knowledge or experience of people of common intelligence, the opinion of experts should not be permitted as a substitute for the combined opinion of the jury. Any other rule would soon lead to trial by experts instead of by witnesses, and jury trials as we have known them would soon be a thing of the past."

In this case, the testimony of the medical expert did not indicate he possessed any peculiar knowledge or ability to assist the jury in the determination of whether the death was accidental or suicide. From the evidence available, the jury was just as capable of forming a correct conclusion as the coroner in this case, and refusal to admit his opinion was proper. There is no compelling reason for altering our present rule of permitting expert opinions only if they are of assistance to the jury. Fick v. Wolfinger, 293 Minn. 483, 488, 198 N. W. 2d 146, 150 (1972).

■ Likewise, it would have been error if the court had admitted the opinion of the sheriff for the same reasons that the deputy coroner's opinion is inadmissible. Furthermore, it is difficult to conceive of a situation where there could be proper foundation for the admission of such an opinion by a sheriff.

■ In examining the verdict, the evidence must be considered in the light most favorable to the prevailing party and the verdict must be sustained if it is possible to do so on any reasonable theory of the evidence. Thus, the verdict should not be disturbed unless it is manifestly and palpably contrary to the evidence. Miller v. Hughes, 259 Minn. 53, 105 N. W. 2d 693 (1960).

Minnesota has adopted the rule that there is a presumption of accidental death as opposed to suicide. State ex rel. Oliver Iron Min. Co. v. District Court, 138 Minn. 138, 164 N. W. 582 (1917). In discussing this presumption, our court in Hawkins v. Kronick Cleaning & Laundry Co. 157 Minn. 33, 37, 195 N. W. 766, 767, 36 A. L. R. 394, 396 (1923), said:

"* * * Given only the fact of death, the presumption against suicide is controlling. But, given in addition to the death, circumstances indicating suicide, it is for the trier of the facts to weigh such circumstances, not only as against contrary proof, but also as against the presumption or inference or deduction, whatever it may be termed, against suicide. And if the trier of facts, where the proof is circumstantial and of such a character as to permit different conclusions to be drawn, has resolved them one way or the other, it is not for the reviewing tribunal to interfere * * *."

■ The jury considered the evidence and could reasonably find accidental death in this case. The condition of the automobile, particularly the badly corroded exhaust system behind the rear seat, made accidental death by carbon monoxide poisoning very possible. The car windows and doors were closed with no hose leading from the exhaust to the interior, indicating that the death was not a planned suicide. The overhead garage door had a propensity to close without human aid and it was very windy that day. The hood of the car was open, it was parked near a workbench, and tools were available in the garage. Subsequent examination of the vehicle indicated that the car was badly in need of repairs and the sticking of the choke would cause the motor to race.

In addition, defendant received the benefit of an instruction by the trial court regarding suicide and accidental death which was more favorable than it was entitled to and ignored our holding.in Hawkins v. Kronick Cleaning & Laundry Co. *supra*. The court instructed the jury as follows:

"* * * The burden of proof is upon the plaintiff Anna Hestad as executrix of the estate of Alert Ona to establish by the greater weight of the evidence that the death of Alert Ona was directly and independently caused by accidental bodily injury. The defendant Pennsylvania Life Insurance Company, on the other hand, has the burden of going forward with the evidence on the matter of suicide."

A careful review of the evidence in this case indicates that the jury was justified in concluding that death was accidental and not suicidal.

Affirmed.