Bruce G. ANDERSON, as Trustee for the Heirs and Next of Kin of Lisa Anderson, Deceased, Respondent,

v.

Herman OHM, Jr., et al., Appellants,

Rochester Independent School District No. 535, Respondent,

Jean Sovde and Craig Zweiner, Respondents.

No. 46390.

Supreme Court of Minnesota.

Sept. 2, 1977.

---

**6.**  At oral argument below, plaintiff conceded the tutorial program had been abandoned by the school in 1975.

Muir & Wieneke and Ross M. Muir, Rochester, for appellants.

O'Brien, Ehrick, Wolf, Deaner & Downing and Thomas Wolf, Rochester, for Anderson.

Hunt, DeVinney & Young, Rochester, for Ind. Sch. Dist. No. 535.

Richard Paul Tuohy, Chaska, for Sovde and Zweiner.

Heard before SHERAN, C. J., and PETERSON and TODD, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Decedent, Lisa Anderson, a 9-year-old pupil in the fourth grade of an elementary school of defendant Rochester Independent School District No. 535, was regularly transported to and from school by a school bus owned by defendant Herman Ohm, Jr., and driven by Ohm's employee, defendant Diane Siem. After getting off the bus on September 21, 1973, Lisa was struck by an automobile operated by defendant Jean Sovde and died as a result of her personal injuries, giving rise to an action for wrongful death by Bruce G. Anderson, Lisa's father and trustee for Lisa's heirs and next of kin. This appeal is focused upon the negligence of defendant owner and defendant driver of the school bus (hereafter appellants) under the circumstances of this occurrence.[1]

Lisa lived in a trailer court on the west side of United States Highway No. 63, approximately 5 miles north of Rochester. The highway in that immediate vicinity consisted of three lanes of traffic, one southbound and two northbound. The outside northbound lane extended approximately 1,000 feet south of the trailer court driveway to a short distance north of the driveway. On September 21, 1973, defendant busdriver, traveling north on Highway No. 63, stopped in the inside northbound lane at a point north of the driveway to the trailer court but south of the end of the outside northbound lane. She testified that from here her visibility extended north some 1,200 feet. The busdriver stopped the bus at this point to accommodate Lisa and four other children who lived on the opposite side of the highway from Lisa and who had to cross the outside northbound lane to reach their own driveways. She then turned off the yellow flashing lights of the bus, activated the red flashing lights, ex-

tended the stop sign arm attached to the front left side of the bus, and discharged the children. It was her practice, she testified, to open the bus door after looking to observe the traffic approaching from both directions, and only after concluding that the traffic was stopping or stopped and that it was safe for the children to cross the street. However, two of the children who got off the bus with Lisa and one child who remained on the bus, testified that on the day of the accident they saw a southbound automobile approaching when the driver opened the door.

Lisa alighted from the bus, walked in front of it, and then began to cross the southbound lane in a diagonal direction toward the driveway to her home, some distance to the rear of the bus. When Lisa reached the center of the southbound lane, she was struck by the Sovde automobile.

It is undisputed that Lisa, upon alighting, passed in front of the school bus and from that point, without further word from the busdriver, proceeded across the highway.

1. Minn.St. 169.45 mandates the State Board of Education to adopt and enforce regulations governing the safe operation of school buses. Minn.Reg. Edu 240(i)(6), adopted pursuant to that mandate,[2] provides in relevant part:

"(i) The Driver:

\*　　\*　　\*　　\*　　\*　　\*

"(6) Shall be responsible for safely delivering the pupils who must cross the highway to the left side of the road by one of the following methods:

"(aa) The pupil shall pass around in front of the vehicle and cross the road only upon receiving word from the driver, or

---

**1.** The jury, by special verdict, found defendant Sovde 90 percent causally negligent and defendant Siem 10 percent causally negligent. It found defendant Ohm personally negligent but was not asked to compare his causal negligence. It found defendant school district not negligent, but the court ruled that the school district's duty to safely convey children was a nondelegable duty and accordingly entered

judgment against the school district. Its subsequent appeal was dismissed upon stipulation. Defendant Sovde was apparently uninsured.

**2.** Minn.Reg. Edu 240 was amended in 1974 by the State Board of Education, Minn.Reg. Edu 240(i)(6), however, was not changed by the amendments.

"(bb) The pupil shall pass around in front of the bus and be conducted across the road by the school bus patrol, or

"(cc) The driver shall personally conduct the pupils across the road." (Emphasis omitted.)

■ Appellants, in appealing from the denial of their alternative motion for a new trial or judgment notwithstanding the verdict, contend that the trial court erred in interpreting the regulation and in instructing the jury concerning it.

The trial court, as part of its instructions, read Minn.Reg. Edu 240(i)(6) to the jury[3] and explained that the regulation provides three alternative methods of compliance. Because subparagraphs (bb) and (cc) admittedly were not complied with, the instructions necessarily focused upon subparagraph (aa). The trial court defined this element of the regulation to impose upon the driver, in addition to the duty to check for approaching traffic, extend the stop arm, and activate the flashing red lights—

"* * * the duty to see that the pupil crosses in front of the bus and that the pupil thereafter crosses the center line and into the opposite lane only upon receiving word from the bus driver."

The trial court instructed the jury that the term "word" as used in the regulation means "a verbal or oral signal or is a gesture that conveys the message to the child." And the court further instructed that violation of the regulation constitutes prima facie evidence of negligence. *Mikes v. Baumgartner*, 277 Minn. 423, 152 N.W.2d 732 (1967).

■ Appellants contend that the regulation does not require that a child, after stepping down from the bus, wait for word from the driver before crossing the centerline. They urge, instead, that "word" is given by the act of opening the bus door and, further, that the trial court should not have defined this part of the regulation but should have submitted to the jury the issue whether their method of discharging school children from the bus constituted substantial compliance with the regulation. The trial court was clearly correct in its interpretation of the regulation, thereby foreclosing the defense that appellants had either literally or substantially complied with the requirement of the regulation. It is the trial court's duty to instruct the jury on the law and not to submit a regulation to the jury for its own interpretation.

■ Appellants, as a corollary contention, urge that the court erred in refusing to instruct or allow argument on excuse or justification for noncompliance and in refusing to rule that the regulation is ambiguous, contradictory, and impossible to satisfy. Appellants introduced no evidence of excuse or justification for noncompliance.[4] The court, in these circumstances, properly refused to instruct or to allow argument concerning excuse or justification. The effect of the court's instruction was to direct a verdict of Siem's negligence. This was the acknowledged intent of the court for, as a matter of law, Siem's method of discharging children who had to cross a lane of traffic to reach their homes clearly did not comply with Minn.Reg. Edu 240(i)(6).

■ 2. Appellants, in addition, raise other issues concerning admission of evidence and instructions of the court, which we consider of secondary importance and only three of which merit brief discussion. First, they contend that the trial court erred in failing to give an instruction on

3. Regulations adopted pursuant to Minn.St. 169.45 have the force and effect of law and are properly read as the court's instructions. *Mikes v. Baumgartner*, 277 Minn. 423, 152 N.W.2d 732 (1967); *Faber v. Roelofs*, 298 Minn. 16, 212 N.W.2d 856 (1973). Violation of such a regulation constitutes prima facie evidence of negligence. *Mikes v. Baumgartner, supra.*

4. They introduced evidence to justify their noncompliance with subparagraphs (bb) and (cc) but their reasons for noncompliance with these subparagraphs do not excuse their noncompliance with subparagraph (aa). The trial court properly disposed of their other argument by instructing that noncompliance with the regulation was not excused by the fact that the bus was constructed so as to make it impossible to comply with the regulations of the State Board of Education.

superseding cause. What we said in *Mikes v. Baumgartner,* 277 Minn. 423, 430, 152 N.W.2d 732, 737, is dispositive of this claim:

"* * * Once having permitted the children to leave the bus, the driver is under a further and continuing duty to guide them safely across the highway if they must cross. * * * The bus driver is given authority to control traffic approaching the bus while taking on or discharging children and a further duty to protect the children from danger caused by negligent failure of approaching traffic to obey the signs he gives. If it were certain that approaching traffic would stop in obedience to the driver's signals, other precautionary measures would be unnecessary; but the fact that some drivers do not obey stop signs is the very reason for the necessity of regulations requiring school bus drivers to protect the children until they are in a place of safety."

Siem testified that drivers did not always stop as required by law when approaching a school bus which had its stop sign extended and lights flashing. In recognition of this fact, the busdrivers were instructed by the school district to report the license plate numbers of all noncomplying automobiles. It is also in recognition of this fact that Minn.Reg. Edu 240(i)(6) imposes upon the busdriver a continuing duty to transport a child safely across the street. Discharging the children when it is apparently safe, particularly when there is more than one child leaving the bus and circumstances may change by the time the last crosses, is not sufficient. We hold as a matter of law that Sovde's negligence did not supersede Siem's negligence and that the jury could find that Siem's negligence was a contributing cause of the accident.

▪ Second, Ohm contends that there was no factual basis upon which to find him personally negligent and that the court erred in submitting to the jury as part of the special verdict the issue of his negligence without instructing the jury upon what theory he could be found personally negligent. Counsel for respondent argued,

and the jury could find, that Ohm was negligent in failing to instruct Siem properly on the method for discharging pupils who must cross the street and in designating a bus stop in the inside lane of two northbound lanes.

▪ The trial court defined negligence generally. Ohm asked for no instructions on what action or inaction might constitute negligence on his part. In the absence of a request, the trial court's failure to give a particular instruction is reversible error only if the omission is an error "with respect to fundamental law." Rule 51, Rules of Civil Procedure. We hold that the court's failure to define particular theories of Ohm's liability in negligence is not an error of fundamental law on the facts of this case.

▪ Third, respondent had alleged that the automobile driven by defendant Sovde was owned by defendant Craig Zweiner. Respondent was permitted, over objection, to inquire concerning the existence of insurance or lack of insurance in Zweiner's name. Appellants objected on the basis that respondent's inquiries were directed solely towards exposing that there was, in fact, no insurance on the car. This inquiry, however, was germane to the issue of whether or not Zweiner was the owner of the automobile and was therefore admissible.

Affirmed.