**David Brian HUGHES, Respondent,**

v.

**QUARVE & ANDERSON COMPANY, Appellant.**

No. C8–82–154.

Supreme Court of Minnesota.

Sept. 23, 1983.

---

& Anderson Company (Q & A) to trespassing minor Brian Hughes was governed by Restatement (Second) of Torts § 339 (1965). Sixteen-year-old Brian dived headfirst into 3 feet of water in Q & A's quarry pond, struck his head on the irregular sand bottom and was left a spastic quadriplegic. An Olmstead County jury returned a verdict for Brian, finding damages of $500,000 reduced by 40 percent for contributory negligence. From the judgment for $300,000, Q & A appeals. We affirm.

Q & A, a sand and gravel business, had several artificial ponds on its property that were frequently used in the summertime for recreational swimming by area residents, particularly by children, as many as 100 children on occasion. Q & A had created the pond in which the accident occurred by the extraction of gravel by heavy machinery. The process used to extract the gravel created irregular terrain with ledges and sharp drop-offs, which created an uneven pond bottom when the hole filled in with water. Because Q & A pumped water from this pond for use in its adjacent gravel-washing machine, the water level varied from time to time. The water was dirty because of the washing operation, making the bottom of the pond invisible. Q & A also dumped sand and waste materials at the edge of the pond.

Q & A made some efforts to keep trespassers off the property. The company or its employees called for police aid to evict trespassers on numerous occasions but erected no fence to keep people out. Only one rusted, shot-up metal No Trespassing sign could be found. For the most part, swimmers, motorbikers and socializers were tolerated.

On the day of the accident, July 25, 1979, there was evidence that the water in the pond was murky and that three weeks earlier a Q & A front-end loader had dumped and smoothed two shovelfuls of sand on the shoreline of the accident site. Brian went to the pond with two friends that day, having been swimming there two or three times in the past. He did a running head-

William J. Baudler, Baudler, Baudler & Maus, Austin, for appellant.

Brown, Bins & Klampe, Michael D. Klampe, Joseph J. Pingatore, Rochester, for respondent.

WAHL, Justice.

This appeal raises the question of whether the duty of defendant landowner Quarve

first dive, expecting a drop-off but encountering sand instead.

The issues on appeal are (1) whether the trial court correctly instructed the jury that Q & A's duty to Brian was governed by Restatement (Second) of Torts § 339 (1965), (2) whether the evidence was sufficient to sustain the jury verdict, and (3) whether the trial court erred in not applying Minnesota's Recreational Use Statute, Minn.Stat. §§ 87.01–.03 (1982).

■ 1. The trial court instructed the jury that Q & A's duty as a landowner to Brian, a trespasser, was governed by Restatement (Second) of Torts § 339, adopted in Minnesota in *Gimmestad v. Rose Brothers Co.,* 194 Minn. 531, 261 N.W. 194 (1935). Section 339 deals with injuries to trespassing children from dangerous artificial conditions. In order for a plaintiff to recover under this section, he must establish each of the following conditions:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339 (1965). *See Hocking v. Duluth, Missabe & Iron Range Railway,* 263 Minn. 483, 489, 117 N.W.2d 304, 308–09 (1962).

Q & A claims that the law as it applies to adult trespassers, Restatement sections 333 and 335, should have been submitted to the jury, either in lieu of section 339 or in addition thereto, with the jury deciding which law to apply. A landowner's duty to adult trespassers, adopted in *Hanson v. Bailey,* 249 Minn. 495, 500, 83 N.W.2d 252, 257 (1957), is as follows:

§ 333. General Rule

Except as stated in §§ 334–339, a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care

(a) to put the land in a condition reasonably safe for their reception, or

(b) to carry on his activities so as not to endanger them.

§ 335. Artificial Conditions Highly Dangerous to Constant Trespassers on Limited Area

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or seriously [sic] bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

Restatement (Second) of Torts §§ 333, 335 (1965).

There is no set age at which a plaintiff should be denied the section 339 instructions. Comment c to section 339, Restatement (Second) of Torts, states that section 339 has been applied in a few instances to children as old as 16 or 17 years and that a majority of jurisdictions have rejected any fixed age limit. However, "[a]s the age of the child increases, conditions become fewer for which there can be recovery under this

rule, until at some indeterminate point, probably beyond the age of sixteen, there are no longer any such conditions." *Id.*

There is authority for the proposition that a trespassing boy of approximately 16, who injures himself by diving into an artificial body of water, is an adult trespasser as a matter of law. *O'Keefe v. South End Rowing Club,* 64 Cal.2d 729, 51 Cal.Rptr. 534, 414 P.2d 830 (1966) (15-year-old); *Haden v. Hockenberger & Chambers Co.,* 193 Neb. 713, 228 N.W.2d 883 (1975) (16-year-old). But that determination can be made only upon a review of the facts and circumstances of a particular case. We observe at the outset that the large number of cases involving teen-aged boys diving into shallow water indicates that mature judgment at age 16, at least as it regards personal safety, cannot be assumed to be the norm. *See, e.g., Carlson v. Tucson Racquet & Swim Club,* 127 Ariz. 247, 619 P.2d 756 (Ariz.Ct.App.1980); *O'Keefe v. South End Rowing Club,* 64 Cal.2d 729, 51 Cal.Rptr. 534, 414 P.2d 830 (1966); *Hendricks v. Peabody Coal Co.,* 115 Ill.App.2d 35, 253 N.E.2d 56 (1969); *Barbre v. Indianapolis Water Co.,* 400 N.E.2d 1142 (Ind.Ct.App.1980); *Taylor v. Mathews,* 40 Mich.App. 74, 198 N.W.2d 843 (1972); *La Rocco v. State,* 8 App.Div.2d 644, 185 N.Y.S.2d 24 (1959). Beyond that, there is evidence in the record through the testimony of Dr. Phillip Haber, psychologist, that Brian was very immature and not even operating on the same level of maturity as other 16-year-olds. Under the facts of this case, we cannot say that the trial court erred in not holding Brian to be an adult trespasser as a matter of law.

■ We have held that the question as to whether there is the required youth for application of the Restatement rule is one for determination by the jury. *Johnson v. Clement F. Sculley Construction Co.,* 255 Minn. 41, 48–49, 95 N.W.2d 409, 414–15 (1959) (13-year-old). Courts should not set age limits for the applicability of section 339, which depends on the age and maturity of the child, the character of the danger and the child's ability to avoid the danger.

*See Ekdahl v. Minnesota Utilities Co.,* 203 Minn. 374, 380, 281 N.W. 517, 521 (1938).

When this court has been confronted with the issue of whether section 339 applies to an adolescent, it has approved submission of the section 339 instructions to the jury to decide that factual issue. *Johnson,* 255 Minn. at 48–49, 95 N.W.2d at 415 (13-year-old); *Ekdahl,* 203 Minn. at 380, 281 N.W. at 521 (14-year-old). *See also Hendricks v. Peabody Coal Co.,* 115 Ill.App.2d 35, 253 N.E.2d 56 (1969) (16-year-old); *Skaggs v. Junis,* 27 Ill.App.2d 251, 169 N.E.2d 684 (1960) (15-year-old); *Taylor v. Mathews,* 40 Mich.App. 74, 198 N.W.2d 843 (1972) (15-year-old). This brings us to Q & A's alternate contention that, if this court decides that there is a question of fact as to Brian's status as a child or as an adult, both instructions should have been given. We reject this claim as well.

■ It would be inappropriate for the court to allow the jury to choose which rule of law to apply to the facts. The court, not the jury, determines the law of a case, and the jury decides the factual issues based on the law submitted to them. *Anderson v. Ohm,* 258 N.W.2d 114, 117 (Minn.1977). We have found no case with similar facts and issues in which the trial court submitted alternate theories of landowner liability, nor do we deem such submission appropriate here. If a plaintiff requests and obtains a section 339 instruction, he must prove, inter alia, that "(c) [he] because of [his] youth [does] not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it." He risks complete denial of recovery if the jury believes him mature enough to appreciate the risk. If he passes the threshold of requirement (c), not having the requisite maturity, he must then proceed to establish the four remaining section 339 requirements. If he does not pass that threshold, there can be no recovery against the landlord and no need to proceed to section 335 to determine landowner liability to an adult trespasser. Inherent in section 339(c) is the jury's option to find that plaintiff is not a child trespasser and to deny

recovery on that basis. In this case, section 339(c) subsumed section 335 by requiring the jury to find whether plaintiff's appreciation of the risk was that of a child or of an adult under the circumstances surrounding the accident.

■ Q & A contends that the trial court improperly instructed the jury that Brian was a minor under Minnesota law. The court's instruction was part of the section 339 explanation. It in no way mandated that the jury find that Brian did not understand the risk, as the court went on to instruct that Brian's actions were to be compared to those of other boys his age, with like intelligence, training and experience, under like circumstances. Furthermore, the court instructed the jury completely on the contributory negligence issue. The jury correctly applied that instruction and found Brian to be 40 percent contributorily negligent. Any perceived error by the trial court as to the instruction that Brian was a minor because he was under 18 was not fundamental so as to cause a miscarriage of justice and require a new trial. The instructions, taken as a whole, correctly stated the law. *Cameron v. Evans*, 241 Minn. 200, 208–09, 62 N.W.2d 793, 798 (1954).

■ 2. Q & A next argues that the evidence is insufficient to support the jury verdict. We will not disturb a jury verdict unless it is manifestly and palpably contrary to the evidence. *Hestad v. Pennsylvania Life Insurance Co.*, 295 Minn. 306, 311, 204 N.W.2d 433, 437 (1973). Q & A submits that there was nothing about the premises in question that in any manner contributed to the accident and that plaintiff did not establish element (b) of section 339, that "the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children * * *." A careful review of the record indicates that the evidence was sufficient to satisfy this element. Unlike most quarry cases, in which the ponds are deserted, Q & A was still working around the pond in which this

accident happened. There is evidence that it was dumping sand in areas around the pond incident to its washing operations, that Q & A's front-end loader driver dumped and smoothed two loads of sand on the shoreline on the day of the accident, and that water was being pumped out of the pond for washing operations on a daily basis. Waste and scrap material were also dumped on the edge of the pond.

■ Plaintiff's expert geologist testified that sand deposited at the accident site spread into the water, causing changed configurations on the pond floor, and that the water level in the pits fluctuated a foot or more depending on how the water was withdrawn for use in the washing operation. He also testified that the very steep offshore slope characteristic of manmade pits was filled in by sand from the shore and that, even 2 years later, the washed sand dumped on the shore was found 20 feet from shore.

There was sufficient evidence from which the jury could conclude that the continual dumping of sand and waste products on the shore combined with the pumping of water out of the pond created a dangerous hidden condition under the water. Testimony by Q & A that it had tried to keep trespassers out of the area supports an inference that it knew that the area was dangerous. In addition, Mr. Quarve, president of Q & A, admitted that there should have been danger signs posted.

The evidence is also sufficient to support each of the other conditions required by section 339. Q & A does not dispute that it maintained the artificial quarry pond on its premises that caused Brian's injury, nor does it deny knowledge of the large number of children who used the pond for swimming, both before and at the time of the accident. There is evidence from which the jury could find that Brian was immature for his age and that he had no appreciation of the danger involved when he dived into the pond. It is also clear from the record that Q & A made little effort to eliminate the dangers or to give warning in spite of its knowledge of the risks. There was testi-

mony from plaintiff's expert that the area containing the quarry pond could be fenced for $10,000, and testimony from Mr. Quarve that the cost would be more than he would be willing to pay. We uphold the jury verdict as not manifestly and palpably contrary to the evidence.

3. Q & A's last contention is that the Minnesota Recreational Use Statute, Minn.Stat. §§ 87.01–.03 (1982) applies to limit liability in this case.[1] We agree with the trial court that the Recreational Use Statute has no application where the defendant landowner does not offer the quarry pond in question for public use and, indeed, claims here that it has discouraged the public from using the pond as a public facility. In any event, section 87.025(a) expressly precludes any limitation on the liability of a landowner for conduct which, at law, entitles a trespasser to maintain an action and obtain relief, as in the case at bar.

The judgment of the Olmstead County District Court is affirmed.

KELLEY, Justice (dissenting).

I respectfully dissent.

As the majority points out, we have held it improper for courts to set age limits for the applicability of Restatement (Second) of Torts § 339 (1965). *Johnson v. Clement F. Scully Construction Co.*, 255 Minn. 41, 95 N.W.2d 409 (1959); *see Ekdahl v. Minnesota Utilities Co.*, 203 Minn. 374, 281 N.W. 517 (1938). But, in my opinion, that is exactly what happened in this case. The trial judge ruled that because David Hughes was a minor under Minnesota law, section 339 applied. Thus, the jury was not permitted to consider whether, because of his youth, his maturity or lack thereof and other factors, 16-year-old David Hughes met the requirement of section 339(c). If the jury, under appropriate instructions, found that respondent, because of his age and experience, was too young to appreciate the risk, and if the jury further found the remaining four requirements of the section 339 rule had been established, it could have resolved the issues submitted by the application of that rule.

As I read the record, there was a question of fact whether David Hughes, in light of his experience and age, should be expected to appreciate the danger. If the jury, under facts here present, concluded that respondent, because of his age and experience, did or should have realized the risk involved, the jury should have assessed appellant's liability under the rules applicable to a trespassing adult set forth in Restatement (Second) of Torts §§ 333 and 335 (1965) adopted by this court in *Hanson v.*

---

1. The relevant sections of Minn.Stat. ch. 87 (1982) provide as follows:

   **87.01 POLICY.**

   It is the policy of the state, in furtherance of the public health and welfare, to encourage and promote the use of privately owned lands and waters by the public for beneficial recreational purposes, and the provisions of this chapter are enacted to that end.

   **87.0221 OWNER'S DUTY OF CARE OR DUTY TO GIVE WARNINGS.**

   Except as specifically recognized by or provided in section 87.025, an owner (a) owes no duty of care to render or maintain his land safe for entry or use by other persons for recreational purposes, (b) owes no duty to warn those persons of any dangerous condition on the land, whether patent or latent, (c) owes no duty of care toward those persons except to refrain from willfully taking action to cause injury, and (d) owes no duty to curtail his use of his land during its use for recreational purposes.

   **87.023 OWNER'S LIABILITY.**

   Except as provided in section 87.025, an owner who either directly or indirectly invites or permits without charge any person to use his land for recreational purposes does not thereby:

   (a) Extend any assurance that the land is safe for any purpose;

   (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed;

   (c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons.

   **87.025 OWNER'S LIABILITY; NOT LIMITED.**

   Except as provided in this chapter nothing herein limits in any way any liability which otherwise exists:

   (a) For conduct which, at law, entitles a trespasser to maintain an action and obtain relief for the conduct complained of; * * *

*Bailey,* 249 Minn. 495, 500, 83 N.W.2d 252, 257–8 (1957).

The majority opines that had an instruction been given incorporating the elements of sections 333 and 335, it would have allowed the jury to elect which rule of law to apply to the case. I disagree. If the jury resolves the factual question of required youth in favor of David Hughes, section 339 applies; if it resolves the question the other way, sections 333 and 335 apply. I submit this is not unusual in the trial of lawsuits. It is done daily in the trial courts of this state in contract, tort and even criminal actions. In many actions, the jury is instructed that if it resolves a fact issue one way, a certain rule of law applies, but if it resolves the issue another way, a different rule of law applies. In such cases the jury is not opting the rule of law to apply, but rather is finding the fact and applying the law that is applicable to the fact so found.

In the instant case, the judge first instructed the jury that David Hughes was a minor. Then he instructed the jury that the landowner's duty to "minor children" was as set forth in section 339, the crucial part of which was that "the children because of their youth do not discover the condition or realize the risk involved." Obviously, David Hughes "did not discover or realize" the risk, if any there was, or he would not have dived as he did. This instruction placed no duty on him to ascertain the condition under water by the use of reasonable care before he dived into it.

Later in the instructions the court did instruct the jury that it was the duty of a child to use that care which a reasonable child of the same age, intelligence, training and experience as David Hughes would have used under like circumstances, but I submit that had to do with appellant's claim that David Hughes was contributorily negligent, not with the establishment of appellant's negligence.

Finally, I conclude that the trial court erred in not submitting Minn.Stat. § 87.01 (1982) for consideration by the jury. The record contains considerable evidence, much of it produced by respondent, that appel-lant's employees condoned and permitted young people to swim in the quarry. That statute would be inapplicable only if the jury found that Restatement section 339 protected respondent.

Accordingly, I would remand for a new trial on the issue of liability—the defendant's and the plaintiff's negligence—and the apportionment of fault. The jury having determined the damages sustained by respondent and there being no substantial challenge by appellant to the amount of such damages, that issue need not be retried.