JOEL DOREN, A MINOR, BY GERALD DOREN, HIS FATHER
AND NATURAL GUARDIAN, v. NORTHWESTERN BAPTIST
HOSPITAL ASSOCIATION AND ANOTHER.
GERALD DOREN v. SAME.[1]

October 2, 1953.

Nos. 35,997, 35,998.

[1]Reported in 60 N. W. (2d) 361.

*Cummins, Cummins, Hammond & Ames,* for appellants.
*Murnane and Murnane,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Action by Gerald Doren as father of Joel Doren, a minor, and by Gerald Doren in his own behalf against Northwestern Baptist Hospital Association, a corporation, and Arthur M. Calvin, its receiver, for injuries sustained by Joel Doren on August 23, 1949, when he fell into a pile of live ashes on defendants' premises and for resulting damages sustained by Gerald Doren as the result thereof.

The jury returned a verdict for Gerald Doren as father of Joel in the sum of $15,000 and for Gerald Doren personally in the sum of $5,000. Defendants moved for judgments notwithstanding the verdicts or for a new trial in each case. This is an appeal from the orders denying such motions. The cases were consolidated for trial in the district court and for hearing on appeal here.

The facts are as follows: At the time of the accident Joel Doren was six years of age. Northwestern Baptist Hospital Association, a corporation, hereinafter referred to as defendant, owned and operated the Mounds Park Hospital bordered by Earl street on the west, Frank street on the east, Thorn street on the south, and Burns avenue on the north in the city of St. Paul. The hospital structures consist of one large building, set approximately in the center of the block, to which there is attached to the east thereof

another building housing the hospital's heating plant and known as the powerhouse.

The powerhouse is enclosed on the north and east sides by an eight-foot board fence which runs approximately 150 feet south from Burns avenue and 125 feet west from Frank street. There is a small gate in the fence. Adjacent to the powerhouse is a small area used for dumping and storing ashes removed from the power plant. An open driveway from Burns avenue leads to the powerhouse and affords a route for trucks hauling the ashes from the area described. There is also an entry thereto to the south of the powerhouse, between it and a small structure east thereof, used by trucks hauling coal to the plant.

Defendant's employees knew that children were constantly in and about the hospital grounds and in the area in which the ashes were deposited after removal from the furnaces. William Carlson, chief engineer in charge of the powerhouse, testified that during the period of approximately 14 years in which he had been employed at the hospital he had frequently observed children playing on the premises, including the enclosed area in which the ashes were kept; that they often climbed to and set upon the top of the fence bordering the area; that they played about the hospital grounds on many occasions with the permission of the hospital employees. Joseph McNeice, maintenance mechanic in the powerhouse, testified that he had permitted them to sit on boxes within the area to watch drilling operations taking place there. Other employees testified that they had observed children playing on the premises and at times had not ordered them to leave; that at times they even got in the boiler room to play; and that they could easily get within the fenced area by way of the driveway from Burns avenue or that leading to Thorn street.

It was customary for defendant's employees to remove the ashes and combustible material from the furnaces in the power plant once a week and to pile them within the enclosed area to await their final removal. After dumping them in this area, they would level them to a thickness of five or six inches and pour water upon

them to kill any still smoldering. There was testimony that ashes thus handled at times would rekindle and smolder beneath the top surface. They were ordinarily permitted to remain in the yard for several days until their final removal by the haulers. The ashes thus deposited in the area were not otherwise enclosed by protective screen or guard nor segregated from the remaining rubbish and debris. Certain metal drums located there might have been used for their storage but were not.

Just prior to the accident, some 18 or 19 wheelbarrows of ashes had been removed from the power plant and deposited in the area described. They had been leveled out and soaked with water, but apparently those beneath the top surface had rekindled thereafter. In the late afternoon of the day of the accident, Joel Doren and a companion entered the enclosed area through one of the entryways thereto preparatory to climbing on the fence bordering it so that they might watch the older boys playing on the hospital grounds. The accident occurred when Joel, in passing the ash pile on his way toward the fence, tripped and fell into the smoldering ashes. As a result his arms and hands and other parts of his body were severely burned, requiring lengthy hospitalization and resulting in permanent deformities.

The charge to the jury included the following:

"* * * in considering the alleged negligence of the defendants it is the law that one who maintains on his premises an artificial condition is liable for resulting injury to young children present thereon, if:

"A. The place where the condition is maintained is one upon which the possessor knows or should know that such children are liable to trespass, and

"B. The condition is one of which the possessor knows or should know which he realizes or should realize as involving an unreasonable risk of death or serious bodily injury to such children, and

"C. The children, because of their youth do not discover the condition or realize the risk involved in their inter-meddling in it or in coming within the area made dangerous by it, and

"D. The utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein.

"* * * in applying the fore-going rule, * * * whether * * * plaintiff was on the defendants' premises by express or implied invitation, or by mere acquiescence of the defendants, or contrary to the defendants' wishes and as trespasser, * * * is immaterial to the plaintiff's right to recover if he has established by a fair preponderance of the evidence each of the foregoing conditions.

* * * * *

"The Court charges you that as a matter of law, that Joel Doren was not guilty of contributory negligence or negligence on his part which contributed directly and proximately to his own injury.

* * * * *

"There is no evidence in the case that there was any negligence on the part of the father or mother [of Joel] in connection with the accident or conduct of the boy."

On appeal it is contended (1) that the court erred in charging the jury relative to the four conditions required to establish defendant's liability as above set forth in that it failed to charge that in determining the presence thereof the jury should consider the reasonableness of the care exercised to keep children from the dangerous area; (2) that plaintiff failed to establish the four conditions specified; (3) that the evidence established as a matter of law that defendant had used more than ordinary care to exclude children from the area; and (4) that the court erred in its instructions regarding the contributory negligence of Joel and his parents and the proximate cause of the accident.

■ This court has discarded the distinction between "attractive nuisance" cases and other negligence cases. It recognizes that, when an artificial condition involving risks to children is maintained where children are known to play, a degree of diligence greater than under ordinary circumstances is required of the property owner. Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18. In determining whether the

property owner is liable for injuries sustained by a child because of such an instrumentality, it follows Restatement, Torts, § 339, which sets forth the four conditions to be established as specified by the trial court here. See, Meagher v. Hirt, 232 Minn. 336, 45 N. W. (2d) 563; Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325; Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194.

As stated in Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 536, 261 N. W. 196:

"* * * Nothing more is needed to support the proposition that one who maintains on his premises an artificial condition is liable for resulting injury to young children trespassing thereon if: [here follows a statement of the four conditions]."

Our decisions on this question have hinged only upon our determination of the establishment of the four conditions referred to. Where such conditions have been proved, we have held that liability follows. Heitman v. City of Lake City, *supra;* Schmit v. Village of Cold Spring, *supra;* Gimmestad v. Rose Brothers Co. Inc. *supra.* Where proof has failed as to any one of them, we have denied recovery. Meagher v. Hirt, *supra.*

■ The reasonableness of the care taken by the owner or occupant of the property to exclude children from the premises and to safeguard the condition maintained is given consideration in determining whether conditions (a) and (b) are present. Whether such an owner or occupant should know that children are likely to trespass and that the condition maintained involves an "unreasonable risk" of their death or injury would bear a direct relationship to the degree of care exercised by such owner or occupant to exclude the children and to safeguard the condition. If the evidence discloses that the precautions taken for such purposes would effectively exclude the children or safeguard the condition, then the absence of conditions (a) and (b) would become apparent. Accordingly, evidence as to the degree of care exercised by an owner or occupant is properly admissible and hence in the minds of the jurors when

they determine the presence or absence of conditions (a) and (b). In view of the plain language adopted in expressing the four requisite conditions to establish liability, any more detailed instructions with reference thereto would constitute surplusage only and might well lead to confusion. The language used clearly conveys the thought that the degree of care exercised may effectively negative the establishment of knowledge that children might trespass or the presence of an "unreasonable risk of death or serious bodily harm." Thus in Meagher v. Hirt, 232 Minn. 336, 45 N. W. (2d) 563, where the evidence disclosed that defendant had exercised reasonable care in stacking a quantity of slate, it was determined that he could not have known that an "unreasonable risk" of death or injury to children attached thereto—the requisite for liability governed by condition (b). It was made clear, however, that the presence of the four conditions of themselves established the owner's liability, separate and apart from the ordinary rules of negligence and contributory negligence, when it was stated that (232 Minn. 339, 45 N. W. [2d] 565):

"* * * In the Gimmestad case, this court stated the rules applicable to a case of this kind as follows (194 Minn. 536, 261 N. W. 196): [here followed the four conditions of Restatement, Torts, § 339].

"In the case at bar, conditions (a) and (c) above are indisputably satisfied. The real dispute concerns the question *whether defendant knew or should have known* that the manner in which his men had stacked a quantity of slate in this schoolroom created an *unreasonable risk* of death or serious bodily injury to children playing in and about the school. * * * He can only be held liable for negligence if there was a *foreseeable risk of injury to children under the circumstances.*" (Italics supplied.)

There the degree of care exercised by the owner, while not considered separate and apart from the four conditions, was the basic factor considered in determining the absence of one of such conditions. Likewise, in Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 536, 261 N. W. 194, 196, where we stated: "Nothing more is

needed * * * if [the four conditions above specified are established]," the jury properly considered whether the owner had exercised reasonable care in excluding children and safeguarding the condition maintained.

It follows that the instructions given here on this issue by the trial court were in conformity with this court's previous directives thereon.

■ We feel that the evidence is sufficient here to establish the four conditions which impose liability upon defendant. There can be no dispute that the maintenance of the ash pile with the smoldering ashes beneath its surface constituted an artificial condition involving a risk of serious injury to children playing near it. There can be no dispute that children of the age of Joel would not be likely to discover from the outward appearance of the ash pile the dangers beneath the surface thereof or realize the risk involved in playing near it. Heitman v. City of Lake City, *supra*. There is substantial evidence that defendant, through its employees, knew that children were likely to trespass, and in fact, it is clear that at times they had actually invited the children to remain and play about the premises in and near the enclosed area where the ashes were piled. The utility to defendant of maintaining the condition must be regarded as slight when it is recalled that, if it so desired, it could readily have stored the burning ashes in the metal containers on its premises, thereby eliminating the risk attendant upon the artificial condition maintained. Schmit v. Village of Cold Spring, 216 Minn. 564, 13 N. W. (2d) 382, 154 A. L. R. 1325; Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194.

■ It is contended that the evidence established as a matter of law that defendant had used more than ordinary care to keep children off its property and, hence, was absolved from negligence. It is true that some precautions were taken to prevent children from gaining access to the premises. Defendant constructed a fence which partially enclosed the area, and at times its employees ordered the children away. However, the evidence also discloses that two open driveways permitted easy access to the dangerous area

and that defendant's employees were aware of the fact that children frequently gained entry to this area thereby and at times invited or encouraged the children to play or watch work in progress there. True, defendant did not owe the duty of keeping constant watch over its premises to prevent trespass thereon, but it would seem to be a fact question whether it might not have made the area where the known dangers existed more secure against the children's entry or otherwise more effectively safeguarded the dangerous condition there maintained. Had the jury determined that defendant exercised more than ordinary care to exclude children or to safeguard a dangerous condition, it would follow that the four conditions required had not been established. The jury, however, determined that the four conditions were established, and implicit therein is the determination that defendant had not exercised the degree of care required. Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18; Schmit v. Village of Cold Spring, 216 Minn. 465, 13 N. W. (2d) 382, 154 A. L. R. 1325.

■ Defendants contend that the trial court erred in failing to instruct the jury that Joel Doren "when he came within the fenced in portion of defendants property on said date, was a trespasser on the property of the defendant, but inasmuch as Joel Doren was a minor of tender years, the Defendant owed to Joel Doren the duty of exercising ordinary care * * *."

Under the conditions set forth in Restatement, Torts, § 339, upon which liability attaches in cases of this kind, it is immaterial that the child involved was a trespasser. As stated in Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 537, 261 N. W. 194, 196:

"* * * They [the children] are trespassers, but, because of their tender years and the consequent lack of perception and responsibility, liability results notwithstanding the trespass."

■ Defendants assert that the instrumentality in itself was not the cause of Joel's injuries and that, in fact, it is undisputed that the accident occurred when he slipped or stumbled when running past the pile and, hence, the maintenance of the pile was not the proximate cause of the accident.

This argument appears effectively answered in Heitman v. City of Lake City, 225 Minn. 117, 124, 30 N. W. (2d) 18, 23, where this court stated:

"We find no merit in defendant's contention that its negligence was not a proximate cause of the accident. Whether plaintiff's decedent fell into the water because he slipped as a result of the wet and muddy condition of the wall or merely because he lost his balance in attempting to reach a floating object is immaterial. In either event, the proximate cause was the negligence of the city in not properly safeguarding a narrow and precipitous causeway, frequented by children, where any unwary child might lose his balance and plunge into water of a dangerous depth."

■ Defendants contend that the trial court erred in failing to instruct the jury that it should determine whether Joel Doren was guilty of contributory negligence. If the conditions imposed by Restatement, Torts, § 339, are established, it is obvious that the contributory negligence of a child involved in an accident would rarely constitute the proximate cause thereof. In any event there is nothing in the record here upon which a finding of contributory negligence could be based. Certainly the fact that Joel, only six years of age, in running past the ash pile tripped and fell into it would not make a fact issue on the question.

■ The rule is well established that a parent is required to exercise that degree of care for a child which a reasonably prudent person would exercise under the same conditions. Mattson v. Minnesota & North Wisconsin R. Co. 98 Minn. 296, 108 N. W. 517. There is no evidence here which would support a finding that Joel's parents had failed to exercise such care. Mrs. Doren testified that she did not know her children played on the hospital grounds, although she was aware that some children played baseball on one corner thereof, and that she did not know what was within the enclosed area. Gerald Doren specifically denied that he was aware that Joel had ever wandered over to the hospital grounds or was accustomed to playing there.

For recovery of a parent to be barred because of negligence, the evidence must establish that the parent had some knowledge that the child was frequenting dangerous areas and failed to warn with reference thereto or otherwise take adequate precautions to prevent the child from going into such areas. Decker v. Itasca Paper Co. 111 Minn. 439, 127 N. W. 183; Mattson v. Minnesota & North Wisconsin R. Co. *supra*. The absence of evidence on this point justified the trial court in directing the jury as it did on this question.

Affirmed.

MR. JUSTICE CHRISTIANSON took no part in the consideration or decision of this case.

MR. JUSTICE NELSON, not having been a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.