# MILDRED SLINKER, TRUSTEE FOR NEXT OF KIN OF DARYLE AHLSTRAND, v. LEO D. WALLNER AND OTHERS.

103 N. W. (2d) 377.

June 10, 1960—No. 37,919.

*Friedman & Friedman,* for appellant.

*Nye, Montague, Sullivan & McMillan* and *Edward T. Fride,* for respondent Wallner.

*Lewis, Hammer, Heaney, Weyl & Halverson,* for respondents Oreck and Duluth Teachers Retirement Fund Association.

KNUTSON, JUSTICE.

This is an appeal from a judgment entered pursuant to a verdict directed by the trial court on defendants' motion at the close of plaintiff's case. The only question presented here is whether the evidence was insufficient to present a jury issue on liability.

The action was brought to recover for the wrongful death of Daryle

Ahlstrand, age 6, by drowning when he fell into the bay at Duluth.

It is alleged in the complaint that defendants James Oreck, Ruth Oreck, and Duluth Teachers Retirement Fund Association are the owners of the premises from which Daryle fell into the bay. The answer is a general denial.

Located upon the premises involved is the Flame restaurant. The rear end of the building in which this business is operated faces the bay. Running the entire width of the rear of the building is a dock rising some 4 to 6 feet out of the water. Facilities are available at the top of this dock for fastening boats moored to the dock. To the right of the building, looking from the rear to the front, is a parking area used by patrons of the restaurant. The parking area is protected from the water by a board fence. The area behind the building is protected by an iron-pipe type of fence. The area between the rear of the building and the water's edge is about 10 or 12 feet in width.[1] Separating the area behind the building from the parking lot is a solid concrete wall about 8 or 10 feet high running from the end of the building to the water's edge. This wall is about 2 feet thick. There are no facilities for scaling the wall on the parking-area side of the wall; on the other side, climbing irons are embedded in the wall, permitting access to the top thereof. The general appearance of the area is shown by the following photograph.

---

[1] The record is completely barren of any descriptive evidence as to the width of portions of the locale mentioned herein, and many of the distances are estimates, made as best we can, without help from the evidence, from photographs in evidence and from answers to questions propounded to counsel upon oral argument.

The Flame restaurant is closed on Sundays. On Sunday, June 1, 1958, defendant Leo D. Wallner had moored his sailboat, or yacht, at the rear of the Flame building with the permission of James Oreck. On this Sunday, Daryle, his brother Russell, age 9, and Clifford Wheeler, age 10, began playing near their home some distance from the Flame restaurant. They then wandered to the courthouse square, which is located immediately to the north of the Flame restaurant, about a mile away. The courthouse square is about 3 blocks from the home of Daryle and Russell. From the record we next find these three children on the parking lot near the Flame restaurant, where they were throwing stones into the water and at gulls. Apparently they discovered the Wallner boat moored on the other side of the wall forming a barrier between the parking lot where they were and the dock at the rear of the Flame. The wall was too high to climb, so they gained access to the dock where the boat was moored by climbing around the end of the wall. This was accomplished by placing one foot in a crack in the concrete on the side on which they were and swinging the other foot around the wall, hanging onto the concrete with their hands. In returning to the parking-lot side of the wall they gained access to the top of the wall by climbing the iron steps and then jumping down to the parking-area side near the building, where the wall was not so high from the ground. They had all successfully negotiated this difficult crossing twice. On the third attempt, Daryle slipped, fell into the water, and was drowned before help could be obtained.

One Randolph Berg, age 11, was called as a witness and testified that he had been in the parking lot 2 or 3 days before the fatal accident. Russell Ahlstrand, decedent's brother, testified that he did not know when he first went there with reference to the date of the accident, but he stated later that he had been in the general area a couple of times before the accident. Clifford Wheeler stated that they had played there the first time approximately a month or so before the fatal accident. Beverly Hill, a 17-year-old girl called as a witness by plaintiff, stated that some 5 or 6 years previous she and two girl friends had played on the parking area. This constitutes all the evidence in the case that children were accustomed to playing on the premises. There

is no evidence to show that any child, or anyone else, had attempted to gain access to the area behind the building by crawling around the end of the wall, nor is there any evidence that any owner or occupant of the premises or of any boat moored thereto had ever seen any children playing on the grounds or in the vicinity near the premises involved.

In this state, we long ago abandoned the idea that liability for injury to or death of trespassing children rests on the so-called attractive-nuisance doctrine and placed liability squarely on the concept of negligence as that term is used in determining the duty of the owner or occupant of land to protect trespassing children from harm. Since Gimmestad v. Rose Brothers Co. Inc. 194 Minn. 531, 261 N. W. 194, we have followed and applied Restatement, Torts, § 339, in a variety of cases.[2] The rule as there stated reads:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

"(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

---

[2]Weber v. St. Anthony Falls Water Power Co. 214 Minn. 1, 7 N. W. (2d) 339 (child injured by falling plank); Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18 (child drowned when he fell into small boat harbor); Chase v. Luce, 239 Minn. 364, 58 N. W. (2d) 565 (injury to child who fell through partly constructed ceiling on house under construction); Doren v. Northwestern Baptist Hospital Assn. 240 Minn. 181, 60 N. W. (2d) 361, 42 A. L. R. (2d) 921 (child injured when he fell into pile of live ashes on defendant's premises); Smith v. Otto Hendrickson Post 212, American Legion, 241 Minn. 46, 62 N. W. (2d) 354 (child injured while sliding down chute); Davies v. Land O' Lakes Racing Assn. 244 Minn. 248, 69 N. W. (2d) 642 (child drowned after falling into drainage pit); Knox v. City of Granite Falls, 245 Minn. 11, 72 N. W. (2d) 67, 53 A. L. R. (2d) 1091 (child burned by kerosene flare set out as warning on construction job); Peterson v. Richfield Plaza, Inc. 252 Minn. 215, 89 N. W. (2d) 712 (child injured when he fell from balcony in store); Johnson v. Clement F. Sculley Const. Co. 255 Minn. 41, 95 N. W. (2d) 409 (child injured when burned by gasoline taken from paving machine).

"(b)   the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

"(c)   the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

"(d)   the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."

In upholding recovery in these cases we have gone a long way in placing responsibility upon the occupier of premises to safeguard trespassing children. However, there must come a point where liability does not exist as a matter of law unless occupiers of land are to be held liable merely because children might stray onto their premises. It would seem that reasonable foreseeability is and must be a necessary prerequisite to liability. Dean William L. Prosser in an exhaustive recent article on this subject (*Trespassing Children,* 47 Calif. L. Rev. 427, 448) says:

"* * * the defendant must have reason to anticipate the presence of the child at the place of danger. Where any such reason is lacking, there is no duty to look out for him, and no liability."

With respect to requirement (a) of the Restatement rule, Dean Prosser is of the opinion that it would be better to use the term "has reason to know" than the words "should know." In that respect he said (p. 450):

"There is, however, one minor error in drafting. It is not correct to say that the defendant 'should know,' if that term is defined, as it is elsewhere in the Restatement, to mean that there is a duty to investigate and ascertain the facts. No case has ever held that the landowner is required to police his premises, or to make any inquiry, to discover whether there is a likelihood that children will trespass. On the contrary, the decisions are all agreed that unless he knows of the attractive character of the condition of his land, or of the past trespasses, or is at least chargeable with such knowledge, there is no liability. Given his knowledge of such facts, he is required to know as much as any ordinary man in the community about the habits of chil-

dren, and their propensities to stray and intermeddle; but investigation or inquiry in the first instance is not demanded of him. The proper phrase, in the esoteric language of the Restatement, is 'has reason to know.' "[3]

With respect to requirement (b) of the Restatement rule, Dean Prosser says (p. 451):

"* * * no case has ever held that the possessor is required to inspect his land, or to police it, to discover whether there is any condition upon it which will be likely to harm trespassing children. Again, on the contrary, the decisions are all to the effect that unless he knows of the condition there is no liability. * * *

\* \* \* \* \*

"It is not enough that the presence of the child may be expected. There must also be unreasonable danger to him if he comes. If the condition is not one from which any such danger is reasonably to be anticipated, there is no negligence in failure to protect him against it, and no liability. * * *

"To begin with, there is virtually no condition upon any land with which a child may not possibly get himself into trouble. * * * Children may, and do, do practically everything. Unless the possessor is to shoulder the impossible burden of making his land completely 'child-proof,' which might mean razing it to the bare earth, something more is called for than the general possibility of somehow coming to some harm which follows the child everywhere throughout his daily existence."

We have followed substantially this line of reasoning in several of our cases. Ewing v. George Benz & Sons, 224 Minn. 508, 28 N. W. (2d) 733, 32 Minn. L. Rev. 526, involved injury to a child who fell through a skylight on the roof of a three-story building. In affirming a directed verdict for defendant, we said (224 Minn. 514, 28 N. W. [2d] 736):

---

[3]While we point out the change in the language of the Restatement suggested by Dean Prosser, it is not necessary in this case to determine which language is most desirable for the reason that the evidence here is insufficient to establish a right to recover under either.

"* * * There is no testimony that the owner or his agents ever authorized George or his parents to use the roof of the building as a playground for children. Nor was there any evidence of notice to the owner that children ever went on the roof of the building."

In Meagher v. Hirt, 232 Minn. 336, 340, 45 N. W. (2d) 563, 565, we said:

"* * * He [the defendant] can only be held liable for negligence if there was a foreseeable risk of injury to children * * *."

In Ewing v. George Benz & Sons, *supra,* we quoted with approval the following from Kayser v. Lindell, 73 Minn. 123, 126, 75 N. W. 1038, 1039:

"* * * While the owner of premises may owe more duty to a child than to an adult coming upon his premises by implied invitation, yet he is not bound to guard every stairway, cellarway, retaining wall, shed, tree and open window on his premises, so that a child cannot climb to a precipitous place and fall off."

In Twist v. Winona & St. Peter R. Co. 39 Minn. 164, 167, 39 N. W. 402, 404, 12 A. S. R. 626, 628, this court, speaking through Mr. Justice Mitchell, said:

"* * * To the irrepressible spirit of curiosity and intermeddling of the average boy there is no limit to the objects which can be made attractive playthings. In the exercise of his youthful ingenuity, he can make a plaything out of almost anything, and then so use it as to expose himself to danger. If all this is to be charged to natural childish instincts, and the owners of property are to be required to anticipate and guard against it, the result would be that it would be unsafe for a man to own property, and the duty of the protection of children would be charged upon every member of the community except the parents or the children themselves."

Again, Dean Prosser said (p. 452):

"It is not enough that the presence of the child may be expected. There must also be unreasonable danger to him if he comes. If the condition is not one from which any such danger is reasonably to be

anticipated, there is no negligence in failure to protect him against it, and no liability."

Here, the record is completely devoid of any evidence from which an inference could reasonably be drawn that the owners or occupiers of the premises involved knew or had any reason to know that children could be expected to play on these grounds any more than it is generally known that they might be found anywhere. Much less is there any evidence of knowledge or reason to believe that children would attempt the difficult feat of crawling around a concrete wall that obviously was maintained only to keep them out of the place where they managed to go. Apparently it is plaintiff's claim that the owner of the boat was required to maintain a watchman on the boat at all times to keep children off, but it would impose an impossible burden on the owner of every pleasure craft in this state to require that he, at his peril, guard it from trespassing children on the supposition that somehow the ingenuity of such children would cause them to find a way to play on the boat no matter where it was moored. With respect to such duty, Dean Prosser said (p. 465):

"* * * No one supposes that railroad trains and other moving vehicles must have guards mounted on top, or be accompanied by a fleet of outriders, to prevent children from clambering abroad, or that every pond, excavation, scaffold, machine or city dump must be surrounded by a fence which no child can scale."

With respect to the general question of negligence, Dean Prosser said (p. 466):

"In particular, the defendant is not required to anticipate and guard against the more unusual forms of infant deviltry which no reasonable man would foresee. If the condition which causes the harm is isolated and remote from the haunts of children, *or is apparently inaccessible to them,* as where it can be reached only by crawling a quarter of a mile through a pitch-dark conduit, he need not expect that they will reach it. * * *

"On the other hand, when the condition is dangerous to children, and its nature or location, or past experience, indicates that they are

likely to trespass and come in contact with it, there will be negligence in failure to take any precautions not disproportionate to the risk." (Italics supplied.)

Applying these principles to the facts of this case, the location involved here is no more dangerous than any other part of the bay front of a port city such as Duluth. Furthermore, the locale itself was not dangerous, even to children. The waterfront was protected by a fence. It was only when children tried to climb around a concrete wall, obviously maintained to prevent access to the place where the boat was moored, that they subjected themselves to danger. The occupier of the premises can hardly be chargeable with constructive knowledge that children would attempt such a foolhardy approach to the other side of this wall. To require the owner of premises adjacent to docking facilities at all times to either guard them by watchmen or require fences that could not be scaled by a child would be to impose an unreasonable and impossible burden upon the owners or occupiers of such property. We think that the trial court correctly ruled that no negligence on the part of any defendant was established in this case.

Plaintiff relies largely on Heitman v. City of Lake City, 225 Minn. 117, 30 N. W. (2d) 18. It is true that the Heitman case, like the one before us, involved the drowning of a child when he fell off a pier, but there the cases part company. In the Heitman case the place where the child was playing was a playground for children. We there said (225 Minn. 122, 30 N. W. [2d] 22):

"* * * The boat harbor was located in the center of a well-established recreational area, where children, as well as adults, habitually came to play, swim, picnic, and fish. On one side was the tourist park, and on the other the bathing beach, which naturally brought an influx of children. The harbor with its many boats was a fascinating place for any child. As an additional attraction, soft drinks could be bought on the premises. Aside from all these considerations, the retaining wall, an integral and essential part of defendant's proprietary undertaking, was in itself attractive to children. There was ample evidence to sustain a finding that children were frequently seen playing on the wall, a structure which was only 16 inches wide and which

constituted the sheer and precipitous side of a drop off into eight or nine feet of water. It was an enticing and treacherous perch for a child eagerly reaching outward over the dangerously deep water to retrieve or play with floating objects. Dry rot and water seepage, as well as the fact that the top surface of one of the timbers was inverted, added to the peril for unwary and pleasure-bent youngsters who might lose their balance. It constituted a place of obvious danger at a focal point of activity alluring to children. * * * The jury could justifiably find that defendant knew, or should have known, of the frequent use of the retaining wall by children of tender years and that an occasional warning by the harbor master did not constitute the exercise of a sufficient degree of care under all the circumstances."

Similarly, in Davies v. Land O' Lakes Racing Assn. 244 Minn. 248, 69 N. W. (2d) 642, the accident occurred in a place where children were known to play. In every case where we have upheld recovery the facts established either that the owner or occupier of the premises knew or had reason to know that children customarily were found in the area. That is not true in the case before us.

In view of our decision on the merits, it is unnecessary to discuss the sufficiency of proof of ownership or occupancy of the premises involved.

Affirmed.