Michael F. KUKOWSKI, a minor etc., et al., Appellants,

v.

WM. MILLER SCRAP IRON AND METAL COMPANY, Respondent.

No. C6-83-1958.

Court of Appeals of Minnesota.

Aug. 14, 1984.

Duane M. Peterson, Winona, for appellants.

Frederic N. Brown, Rochester, for respondent.

Heard, considered and decided by FOLEY, P.J., and SEDGWICK and RANDALL, JJ.

## OPINION

FOLEY, Judge.

Plaintiff-Michael F. Kukowski appeals from the apportionment of damages in his suit for injuries he sustained when he was a trespassing minor. Defendant-Wm. Miller Scrap Iron and Metal Company (Wm. Miller Co.) filed a notice of review of the judgment for plaintiff and the denial of its post-trial motions. We reverse and remand for a new trial on all issues.

## FACTS

In August 1977, Michael F. Kukowski, then 14, and three other boys of similar age, biked to an industrial park in Winona at about 7 p.m. After entering the industrial park, the boys decided to go over to a crane sitting on the property of Wm. Miller Co. No employees were in the area since the company is closed at this time of day.

The boys climbed onto the crane and found it to be steady. The crane had been painted, erected and rendered inoperable that spring and sat outside defendant's fence as advertisement for the company and for historical purposes. Kukowski and two others climbed onto the erected boom of the crane and began to bounce the boom up and down by moving their body weight. The boom was held in place by steel cable and clamps. Kukowski stood near the middle of the boom and estimated he was about 10 feet off the ground. After about 5 to 10 minutes of rocking the boom, it started to fall. The boom dropped a few feet down and the other two boys jumped off. About two seconds later the boom fell to the ground with Kukowski and he struck and injured his right elbow. (He is left-handed). He now suffers a 15% permanent partial disability of his right arm; he can't completely extend his right arm.

Kukowski sued Wm. Miller Co. for his injuries. The other two boys were made third party defendants but before trial, each settled with Kukowski under Pierringer releases.

Following the court's instruction, the attorneys waived their right to be present when the verdict was returned and the judge informed the attorneys he would not discharge the jury until he reviewed the special verdict for consistency and sufficiency, whether by phone or personally.

The jury returned with a verdict which the clerk relayed to the judge over the telephone. (The judge had to be out of town that evening.) The judge found this verdict to be inconsistent because the jury (1) found Wm. Miller Co. negligent, (2) found that its negligence was *not* a direct cause of the accident, and (3) then found

35% of its negligence "contributed to Michael F. Kukowski's injuries." The judge instructed *the deputy clerk*, via telephone, to provide the jury with certain additional instructions. Neither counsel was informed or present when the deputy clerk instructed the jury relative to its inconsistent verdict and the law relative thereto. The dialogue between the deputy clerk and the jury is as follows:

CLERK: Judge Collins was reached by telephone and has reviewed the Special Verdict form as returned by the jury at 6:45, and upon that review he has authorized me to inform you as follows: He would like you to keep the original verdict form and not make any changes on it, but he would like you to take another blank Special Verdict form. He said that upon his review of the Special Verdict form as returned, there is some question as to consistency between the answer you gave to question 1B and the fact you inserted a figure in question 5A and there is some question as to consistency between the answer that you gave to question 2B and the fact that you inserted a figure in question 5B. The judge suggests that you re-read the verdict form, particularly those questions that he mentioned the possible inconsistency upon and particularly the narrative portion of question 5. He would like you to insert a percentage figure with regard to those persons and/or corporation that you have found to be negligent and whose negligence has been found to be a direct cause of the injuries.

Judge Collins requests that you return to the jury room for further deliberation, consistent with his observations. He will be calling in about 15 to 20 minutes.

JUROR: Can we have that to read?

CLERK: If you want to go back in the jury room and deliberate, I will try to get it in better form than it is in now. It is kind of messy the way it is now.

(Whereupon the jury retired to deliberate.)

The jury retired and a short time later presented the deputy clerk with written

questions regarding the terms "negligence" and "direct cause." The subsequent dialogue between the deputy clerk and the jury is as follows:

CLERK: Judge Collins has received your questions: "Could you please define the term 'negligence' and 'direct cause'; and we the jury feel that there are two questions here (one) direct responsibility of the accident (two) negligent responsibility, which does not lead to the direct cause of the accident", by telephone and has authorized the following response. Certain portions of the original instructions will now be re-read. You must continue to be mindful to consider these instructions in the light of all the others. I will first repeat his observations of your original verdict.

Judge Collins was reached by telephone and has reviewed the Special Verdict form as returned by the jury at 6:45 and upon that review he has authorized me to inform you as follows: [whereupon the entire instruction regarding the inconsistent verdict, quoted above, was re-read] . . .

Now in response to your most recent question. Negligence is the doing of something which a reasonable person would not do, or the failure to do something which a reasonable person would do under like circumstances. Negligence is a failure to use reasonable care, and except in the case of a child, reasonable care is that care which a reasonable person would use under like circumstances. The evidence here is that on August 19, 1977 when he was a child of 14 years, Michael Kukowski was a trespasser upon the property of the William Miller Scrap Iron and Metal Company .... [whereupon the clerk summarized the evidence by quoting from the court's own earlier instruction which included the elements of the cause of action of negligence to a trespassing minor].

Now certain of the questions on the verdict form relate to the phrase, direct cause. As used here, a direct cause is a cause which had a substantial part in bringing about the injuries, either immediately or through happenings which follow one after another. Now there may be more than one direct cause of injury. When the effects of negligent conduct of each of two or more persons actively work at substantially the same time to cause injury, each may be a direct cause of the injury.

Now if you will refer again to that Special Verdict form, follow with me as I read question 5. [whereupon question 5 was read and explained as the court had earlier explained in its instructions] . . . . . That's it.

Following these instructions, the jury changed its verdict, finding that Wm. Miller Co.'s negligence directly contributed to Kukowski's injuries. The jury apportioned 35% of the fault to Wm. Miller Co., 35% to Kukowski and 25% and 5% to the other two boys. Wm. Miller Co. moved for judgment notwithstanding the verdict or a new trial.

The court entered judgment for Kukowski. Kukowski appeals contending that he is entitled to more than a 35% award of the damages found by the jury. Wm. Miller Co. filed a notice of review asserting that Kukowski failed to meet its burden of proof entitling him to judgment notwithstanding the verdict, or that it is entitled to a new trial because of trial court irregularities.

## ISSUES

1. Under the facts of this case, was defendant entitled to judgment notwithstanding the verdict?

2. Did reversible error occur when the trial court permitted a deputy clerk of court to read instructions of substantive law to the deliberating jury in the judge's absence?

## ANALYSIS

*1. Sufficiency of evidence:*

■ Defendant-Wm. Miller Co. contends that plaintiff failed to meet its burden of proof relative to each and every element of the cause of action of negligence to a tres-

passing child and thus it was entitled to judgment notwithstanding the verdict.

The cause of action of negligence to a trespassing child has five elements:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422, 424 (Minn.1983) (quoting Restatement (Second) of Torts § 339 (1965)).

■ A trial court considering a motion for judgment notwithstanding the verdict must determine whether there is any competent evidence reasonably tending to support the verdict. *Conover v. Northern States Power Co.*, 313 N.W.2d 397, 401 (Minn.1981). In reviewing the evidence, the trial court " 'admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony of the adverse party.' " *Id.* Here, the trial judge stated that this was a close case and presented a question for the jury.

■ Defendant asserts that plaintiff produced no direct evidence on elements a and b, above. Plaintiff is not required to produce *direct* evidence on the issue of defendant's knowledge of the dangerous condition on its property. In *Hughes*, the Minnesota Supreme Court found the evidence sufficient to support a jury *inference* that de-

fendant knew its quarry pond posed an unreasonable risk of danger to a trespassing child, where the defendant dumped sand into the pond and the child was injured when he dove into the pond. In *Weber v. St. Anthony Falls Water Power Co.*, 214 Minn. 1, 7 N.W.2d 339 (Minn.1942), the jury also drew an *inference* that defendant knew or should have known of the dangerous condition created by its large pile of lumber planks stacked in a haphazard pile with a step-like pattern to the top of the pile. The Minnesota Supreme Court stated:

It is not necessary, as the court below held, that the child trespassed because of the attractiveness of the particular condition. It is enough that the possessor knows or should know that children are likely to trespass on his land and that they will be exposed, if they do trespass, to risk of harm by maintenance of the condition.

*Weber* at 5, 7 N.W.2d at 342. Continuing, the court states:

[T]he possessor is subject to liability to children who after entering the land are attracted into dangerous intermeddling by such a condition maintained by him although they were ignorant of its existence until after they had entered the land, if he knows or should know that the place is one upon which children are likely to trespass and that the condition is one with which they are likely to meddle.

*Id.* at 5–6, 7 N.W.2d at 342 (quoting Restatement, Torts, § 339, comment on clause (a)).

■ After reviewing the record, we note that the evidence that children frequently biked and fished in the vicinity for many years was sufficient evidence from which a reasonable jury might infer that defendant had notice that children were likely to trespass on the crane and thereby become injured. There was also testimony from which the jury might infer that the condition of the crane was likely to injure children who were "attracted into dangerous intermeddling" with the crane and its erected boom. (We recognize that the doctrine

of "attractive nuisance" no longer applies in these cases, however, the fact a dangerous object might attract children is also related to whether a possessor should know children are likely to trespass and become injured playing with that object. *Weber*, 214 Minn. 1, 7 N.W.2d 339.)

■ Defendant also contests the adequacy of evidence on element (c), arguing plaintiff was old enough to realize the risk involved in jumping on the crane's boom. Plaintiff testified he did not realize the danger of his actions. The jury apparently believed plaintiff and we will not upset its finding.

The evidence was sufficient in this case to present a jury question on defendant's negligence, and to support its finding of defendant's negligence.

*2. Jury instructions:*

■ Respondent claims that certain trial irregularities deprived it of a fair trial. Specifically, we review the following irregularities asserted by respondent:

(1) When the jury's first verdict was communicated to the judge via telephone, the judge instructed the deputy clerk of court to communicate and instruct the jury regarding this inconsistent verdict.

(2) After the jury continued further deliberations and returned with two written questions, the deputy clerk communicated the questions to the judge over the telephone, received the judge's response, then communicated the judge's additional instructions to the jury after repeating his earlier instruction about reconciling the inconsistent verdict.

Respondent argues he was denied a fair trial because although the court reporter transcribed what the clerk told the jury, the judge is the only one who may communicate additional instructions to the jury on substantive issues, and counsel should have been advised that additional instructions were sought so that they could be present and make a record.

We agree with respondent. The stipulation by counsel that the deputy clerk might receive and file the verdict does not carry with it any waiver by either counsel that the court could authorize the deputy clerk to take instructions from the judge over the phone on *substantive* issues and thus *instruct* the jury as would the judge if he were present.

■ Rule 51 of Minn.R.Civ.Pro. and Procedure 34 of the Minn. Civil Trailbook both indicate *the court* shall instruct the jury. In addition, Procedure 34, indicates *"the trial judge* shall review the propriety of an answer with counsel, unless waived." (Emphasis added.)

The only authority for the clerk of court to communicate with the jury would relate to administrative matters such as housing, meal arrangements, emergencies, requests to speak with the court, and the return of the verdict. These are routine communications essential to the orderly administration of justice.

The trial judge felt he used sufficient safeguards in directing the deputy clerk of court to instruct the jury in his absence. These included: (1) a transcript was made of all the additional instructions which the deputy clerk read to the jury as directed by the judge by phone, and (2) a written copy of the court's own instructions, previously given, was left with the deputy clerk for her to read from as directed by the judge. The procedure followed here cannot be approved. This case involved many difficult and close questions of liability, including negligence and direct cause, comparative fault and damages. The trial lasted four days. The judge's failure to be present to personally answer the jury's questions may have inhibited additional jury questions on important aspects of this case.

During the deputy clerk's second exchange with the jury, the clerk made a mistake in reading the written directions of the court by omitting the following: "In the case of a child, reasonable care is that care which a reasonable child of the same age, intelligence, training and experience, as in this case Michael F. Kukowski, at the time of the accident would have used under like circumstances." Had either the judge

or counsel been present, this error could have been corrected.

■ The clerk's omission was a crucial error. The negligence of the plaintiff, a minor, was seriously contested and accurate instructions on the duty of care by a child, was essential here. Allowing a clerk of court to read instructions on substantive law can lead to mistakes requiring a new trial, as here, a costly venture for both parties. The rule is clear that *the judge* give instructions of law to the jury and this duty may not be delegated. In *Sabraski v. Northern States Power Co.*, 304 N.W.2d 635 (Minn.1981), where the clerk responded to a juror's question, then was instructed by the trial judge how to answer the jury's question, the Minnesota Supreme Court concluded:

> [O]ur prior decisions require the conclusion that the actions of both the clerk and the judge, although innocent, created a situation of sufficient gravity that it must be presumed to have been prejudicial. *See Cronquist v. City of Minneapolis*, 258 Minn. 30, 102 N.W.2d 512 (1960).

*Id.* at 637.

■ The better practice here would have been to recess the jury until the following morning when the judge could review the matter of the inconsistent verdict with counsel and personally instruct the jury relative thereto. *Meinke v. Lewandowski*, 306 Minn. 406, 413 n. 5, 237 N.W.2d 387, 392 n. 5 (1975).

The procedural error here affects the entire verdict and requires a new trial on all issues.

Because a new trial is necessary on all issues, we deem it unnecessary to address other issues raised by the parties on appeal.

### DECISION

Reverse and remand for a new trial on all issues.