Richard CROAKER, a minor, by and through his natural father, Charles D. CROAKER, Sr., Respondent,

v.

Gordon MACKENHAUSEN and Karen Mackenhausen, individually, and as owners and operators of Sah Kah Tay Resort, defendants and third-party plaintiffs, petitioners, Appellants,

v.

Duane Lee McFarland, et. al., Third–Party Defendants.

No. C8–98–119.

Supreme Court of Minnesota.

May 13, 1999.

Rehearing Denied June 24, 1999.

Charles R. Powell, Powell, Powell & Light, Bemidji, for appellants.

Michael D. Doshan, Fredric A. Bremseth, Thomas W. Geng, Doshan & Bremseth, Wayzata, for respondent.

Mark A. Solheim, Rider, Bennett, Egan & Arundel, Minneapolis, for third-party defendant Duane Lee McFarland.

Anne Meredith–Will, Meredith–Will Law Office, Bemidji, for third-party defendant Charles Dean Croaker.

## OPINION

STRINGER, J.

Respondent Richard Croaker, age seven, was injured when some gasoline ignited while he was playing in an unlocked, disabled van parked near a shed on the property of Gordon and Karen Mackenhausen on Cass Lake in Cass County. Respondent brought suit alleging the appellants as possessors of land failed in their duty of care toward respondent as a child trespasser through their "negligent, careless and unlawful conduct, including * * * maintaining an attractive nuisance" and failing to properly store flammable materials. The district court originally granted summary judgment for appellants, ruling that respondent had failed as a matter of law to allege facts sufficient to prove the necessary elements of a duty to trespassing children as set forth by the Restatement (Second) of Torts § 339 (1965), but the court of appeals reversed and remanded, holding that there were issues of fact precluding summary judgment. *Howard v. Mackenhausen,* 553 N.W.2d 435, 440 (Minn.App.1996). Following a three-day trial, a jury found appellants 60% negligent and awarded respondent $151,059 in total damages. The trial court denied appellants' motions for judgement notwithstanding the verdict (JNOV) and a new trial and the court of appeals affirmed. We reverse the court of appeals and remand to the trial court to enter judgment for appellants.

The facts are not in dispute. Sah Kah Tay Resort, located on Cass Lake, Minnesota, was owned and operated by appellants Gordon and Karen Mackenhausen in June of 1993. During the summer up to 35 children stayed at Sah Kah Tay each week and neighborhood children frequently came to the resort's lodge to buy candy or play video games. A paved public road bisected the resort property and separated the lodge from a large storage shed also located on the resort property. Parked near the shed was an unlocked step van which had been used by the resort for cabin cleaning purposes but had been disabled since the previous autumn. Several weeks before the accident a window of the van had been broken on the same night three unidentified adults were seen attempting to steal a car from a house near the shed.

The shed, which appellants testified was always kept locked, faced a narrow dead-end gravel road platted as Lake Street. The street provided access to only one home in addition to the shed. Although children were known to use the gravel road and a path through the woods that extended from the road's dead end, none of the adult neighbors who testified had ever seen children near either the shed or the van.

The main door of the shed was suspended on overhead rollers and was opened by sliding it to the side to gain access to the shed's interior. The clearance underneath the door varied from 4 inches to 11½ inches between the bottom of the door and the ground. During the winter months when the shed was used to store grills, boats, and other equipment, appellants used a $2 \times 12$-inch plank to block the gap to keep out wild cats. In the summer the shed was largely empty but appellants rented space in it to various boat owners for temporary storage. Gasoline for the boats of the resort guests was stored in a locked building near the lakeshore and well away from the shed. Appellants did not recall ever discussing with boat owners the storage of gasoline on the boats stored in the shed.

Appellants were in the shed on the morning of June 7, 1993 as they worked on a remodeling project at the resort, and the owner of the neighboring Birch Villa Resort testified that in the early afternoon he moved a 16-foot aluminum boat into the shed for a resort guest for short-term storage. The shed was locked before and after the boat was moved inside. The boat had two gas tanks located under a hatch: the main gas tank was almost empty, but the smaller red plastic 2½ gallon auxiliary tank was almost full.

Charles Croaker, Sr. testified that around noon on the day of the accident he dropped off his sons, 8–year old Charles Croaker, Jr. and 7–year old respondent Richard Croaker, to spend the afternoon at their aunt's home on the other side of the woods from appellants' shed. After playing in the yard for awhile, the boys walked to a neighboring

park where they were joined by three other children: 5–year old Terry LaDuke, 9–year old Duane McFarland and 3–year old Mikey Howard. The five boys then walked to the Sah Kah Tay lodge via a path through a wooded area, then onto the dead-end gravel road, past appellants' shed and across the paved street to the lodge. Finding the lodge closed, the boys retraced their steps to the woods to play.

After a time Duane McFarland told the others that there was money in appellants' van parked near the shed and he suggested they play there. Each of the boys testified that none of them had ever played in the van or shed before, nor had they ever seen other children do so. Duane testified that "[w]e decided to go play with fire," and that the boys went into the van to look for paper to burn. In the back of the van the boys found some bars of soap, a mop handle, rags, cleaning supplies, and at least one ashtray containing cigarette butts. The boys played in the van for awhile, then played in the woods, and eventually returned to the van. At 3–year old Mikey's request, Duane lifted him up onto a shelf in the back of the van. Respondent, Duane and Terry made several small fires using a lighter they had brought with them and paper they found in the van. Meanwhile, Charles carved a bar of soap using a key.

A short time later Duane left the van and out of curiosity entered the shed, crawling through the gap under the locked door. Duane testified that once inside he decided to "look[ ] for something cool," so he climbed onto the boat parked there a few hours earlier. He noticed the hatch compartment at the back of the boat and pressed a latch to pop it open. He pulled out the small red plastic auxiliary gas tank, read the "flammable" warning on the side and decided to take it back to the van.

Inside the van respondent held a coffee can or beer bottle while Duane poured some gasoline into it. Some of the gas spilled on respondent's hands and some spilled on the floor of the van. Duane testified that he had left the immediate area of the gasoline for the front section of the van because he wanted to see if the van would start and did not start the fire, but respondent disagreed, testifying that Duane stuck a piece of paper in the neck of the bottle, lit it, and backed up, and the paper burned for awhile – then the explosion occurred. Both Duane and Charles were in the front of the van as the exploding gasoline engulfed the back of the van in flames. They escaped out the front passenger door but respondent and Terry were forced into the back corners of the van. Duane ran to a nearby house to call 911 and Charles opened the back doors to free respondent and Terry, both of whom were badly burned. Respondent was hospitalized for weeks with second-degree burns to his face, and deep second- and third-degree burns to the back of his hands which required skin grafts. Tragically, 3–year old Mikey died in the fire.

Respondents brought suit against the appellants claiming that as possessors of land they are responsible for respondent's injuries by reason of their "negligent, careless and unlawful conduct," including maintaining an attractive nuisance and failing to keep "dangerous and highly flammable" materials under lock and key. The district court instructed the jury on the five elements necessary to find a possessor of land negligent with respect to trespassing children, as set forth by the Restatement (Second) of Torts § 339.[1] The jury returned a verdict finding appellants 60% negligent and Charles Croaker, Sr. 40% negligent in failing to adequately supervise respondent. The jury awarded damages totaling $151,059.

Appellants moved for JNOV or, in the alternative, a new trial. The motion was subsequently amended to include several new findings of fact and conclusions of law and a

---

1. The court did not instruct that each element must be found, rejecting appellants' proposed special verdict form focusing on the individual elements of section 339. Rather, the court gave the jury a verdict form that asked only a single question about appellants' negligence: "[W]ere Gordon Mackenhausen and Karen Mackenhausen d/b/a Sah Kah Tay Resort negligent?" The complete instructions were available to the jury during deliberations. Because we reverse, we do not reach the issue raised by appellants as to whether the trial court erred in failing to submit the special verdict form requested by appellants.

stay of judgment. The trial court denied the motions for JNOV and a new trial, but granted appellants' motion to amend the findings to include the fact that none of the children had ever played around or in the van or shed prior to the day of the accident, and none of the adults who testified had ever seen any children there. The trial court stated that the only reason it was denying the motion for JNOV was because the court of appeals in *Howard v. Mackenhausen*, 553 N.W.2d 435 (Minn.App.1996), reversed the grant of summary judgment in favor of appellants on the basis that there were genuine issues of material fact as to each of the five elements of the alleged duty under section 339 of the Restatement (Second) of Torts. *See id.* at 440.

Appellants appealed contending that the trial court erred in not granting a JNOV, the evidence did not support the jury's award of $50,000 for future medical expenses, and the special verdict form should have included questions for each element of the Restatement (Second) of Torts, § 339. *Croaker v. Mackenhausen*, No. C8–98–119, 1998 WL 389060, at *1 (Minn.App. July 14, 1998). The court of appeals reduced the award for future medical expenses to $15,376, the amount stipulated by the parties, but otherwise affirmed, holding that the trial court's verdict form was within its discretion and there was sufficient evidence to support each of the five elements of section 339 to create a duty for a possessor of land to a child trespasser. *Id.* at *2–*4.

▆▆▆▆ Our analysis begins with the general principle that a possessor of land owes no duty to trespassers. *Doe v. Brainerd Int'l Raceway, Inc.*, 533 N.W.2d 617, 621 (Minn. 1995). But a narrow exception has been grafted onto this general principle and a duty arises when five specific conditions are met. We held in *Gimmestad v. Rose Bros. Co.*, 194 Minn. 531, 261 N.W. 194 (1935), that the duty of a possessor of land to trespassing children is governed by the Restatement of Torts.[2] *Id.*, 194 Minn. at 536, 261 N.W. at 196. The current Restatement reads:

### § 339. Artificial Conditions Highly Dangerous to Trespassing Children

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts. Because all five elements must be proven to establish liability, the failure to meet the requirements of any one element would be fatal to respondent's claim.

Our past decisions have made it clear that we strictly construe the requirement that the possessor of land know or have reason to know that children are likely to trespass. *See, e.g., Doren v. Northwestern Baptist Hosp. Ass'n,* 240 Minn. 181, 189, 60 N.W.2d 361, 367 (1953) (holding that the possessor of land had a duty to children burned by live ashes left in places where children were known to trespass); *Heitman v. Lake City,* 225 Minn. 117, 122, 30 N.W.2d 18, 22–23 (1947) (holding a municipality had a duty to repair a wall located in the center of a recreation area where children were known to swim, fish and play); *Chase v. Luce,* 239 Minn. 364, 367, 58 N.W.2d 565, 566–67 (1953) (holding a possessor of land liable when a

---

**2.** In so holding, we rejected the attractive nuisance doctrine which focused on whether the dangerous condition on the land was so alluring

that its presence constituted an invitation for children to trespass and intermeddle with it. *Gimmestad,* 194 Minn. at 536, 261 N.W. at 196.

child was injured on a construction site after employees had chased other young children away); *Gimmestad*, 194 Minn. at 537, 261 N.W. at 197 (holding possessors of land liable for injury to a child from negligently piled lumber located on property the possessor knew to be frequented by trespassing children). The common denominator of these earlier cases is that in each case the defendant possessor of land knew or had reason to know that children trespassed on the property where a dangerous artificial condition existed.

We have also required that a possessor of land know or have reason to know that children are likely to trespass in circumstances where trespassing children have been injured in accidents involving gasoline located on a possessor's property. In *Johnson v. Clement F. Sculley Const. Co.*, 255 Minn. 41, 95 N.W.2d 409 (1959), the defendant construction company left a paving machine on a project site for approximately a year. *Id.* at 44, 95 N.W.2d at 412. Neighborhood children played on the machine and took gasoline from its tank to make "jellie bombs"—glass bottles containing gasoline with a paper wick stuck into the bottle neck. *Id.* Employees of the defendant company had seen children playing on the paving machine and smashing jellie bombs. *Id.* A 13–year old neighborhood boy stole some gasoline from the paving machine and took it to a fire built for a "weiner roast" in a backyard nearby. *Id.*, at 45, 95 N.W.2d at 412. He tripped as he approached the fire spilling the gasoline into the fire and severely burning a 6–year old friend. *Id.* We held that the "the jury could have found that the defendants knew or should have known of the children's activities with the machine and gasoline over a considerable period of time." *Id.* at 50, 95 N.W.2d at 415.[3]

Absence of knowledge or reason to know that children are likely to trespass at the place where the dangerous condition exists has been fatal to claims brought against possessors of land on behalf of children injured on the possessor's property. A defendant landlord who had forbidden children from the roof of his building and had no knowledge that children had trespassed there was found not liable when a 3–year old boy fell through an unprotected skylight on the roof. *Ewing v. George Benz & Sons*, 224 Minn. 508, 522, 28 N.W.2d 733, 740 (1947). In *Slinker v. Wallner*, 258 Minn. 243, 103 N.W.2d 377 (1960), we held the defendant land possessor not liable when a boy drowned after falling from a wall into the water of Duluth harbor concluding there was little evidence that children played on the property and no evidence that children had ever played on the wall. *Id.* at 246–47, 103 N.W.2d at 380. The child had to negotiate a series of obstacles before reaching the wall from which he fell, leading to the conclusion that the land possessor "can hardly be chargeable with constructive knowledge that children would attempt such a foolhardy approach to the other side of this wall." *Id.* at 252, 103 N.W.2d at 383. The court quoted Dean William Prosser with approval:

> In particular, the defendant is not required to anticipate and guard against the more unusual forms of infant deviltry which no reasonable man would foresee. If the condition which causes the harm is isolated and remote from the haunts of children, *or is apparently inaccessible to them,* as where it can be reached only by crawling a quarter of a mile through a pitch-dark conduit, he need not expect that they will reach it.

*Id.* at 251–52, 103 N.W.2d at 383 (quoting William L. Prosser, *Trespassing Children*, 47 Calif. L.Rev. 427, 466 (1959)).

Appellants argue that the court of appeals has, over the last 15 years, developed an erroneous legal standard in applying element (a) of section 339. We agree. In 1984, the court of appeals reviewed a case involving a 14–year old boy injured in a fall from a crane located in front of the defendant's office. *Kukowski v. Wm. Miller Scrap Iron & Metal*

---

3. In affirming the verdict against the defendants and the trial court's denial of a motion for a new trial, the *Johnson* court distinguished the facts before it from an earlier case, *Dahl v. Valley Dredging Co.*, 125 Minn. 90, 145 N.W. 796 (1914), where no liability was found in part because there was no evidence that the children had trespassed where gasoline-like naphtha was stored prior to their injury. *Johnson*, 255 Minn. at 50–51, 95 N.W.2d at 416.

*Co.,* 353 N.W.2d 638, 640 (Minn.App.1984). The defendant possessor of land appealed the verdict in favor of the plaintiff, arguing that there was no evidence that the place where the artificial condition existed was one the possessor knew or had reason to know children were likely to trespass as required by section 339(a) or that the artificial condition was one the possessor knew or had reason to know and which he realized or should realize would involve an unreasonable risk of death or serious bodily harm to the trespassing children as required by section 339(b). *Id.* at 642. Relying on *Weber v. St. Anthony Falls Water Power Co.,* 214 Minn. 1, 7 N.W.2d 339 (1942), and *Hughes v. Quarve & Anderson Co.,* 338 N.W.2d 422 (Minn.1983), the court of appeals held that there was sufficient evidence to support an inference that children would trespass on the property, thereby satisfying element (a) of section 339. *See Kukowski,* 353 N.W.2d at 642. But in both *Weber* and *Hughes* the trespass was known, and the permissible inference—and the *only* permissible inference—was that because of the *known* trespass, it could be inferred that children would intermeddle with the dangerous condition on the land. *Weber,* 214 Minn. at 4–5, 7 N.W.2d at 341–42; *Hughes,* 338 N.W.2d at 426. The *Kukowski* court therefore inappropriately extended the holdings of *Weber* and *Hughes* that proof of a known trespass can raise an inference that the children would intermeddle with the dangerous condition, to proof that when children were in the *vicinity* of the dangerous condition, an inference could be drawn that the children were known to trespass:

> After reviewing the record, we note that the evidence that children frequently biked and fished in the vicinity for many years was sufficient evidence from which a reasonable jury might infer that defendant had notice that children were likely to trespass on the crane and thereby become injured.

*Kukowski,* 353 N.W.2d at 642. The court of appeals cited this incorrect holding as authority in the *Howard* appeal for its ruling that since children used the road next to

appellants' shed and were therefore "in the vicinity," there was an issue of material fact whether the appellants "had reason to know that children were likely to trespass in the area." *Howard,* 553 N.W.2d at 438–39.

Our historically cautious approach to applying the section 339 exception to the general principle that a possessor of land has no duty to trespassers requires more than children being known to be "in the vicinity" of the dangerous condition. The possessor "must have reason to anticipate the presence of the child *at the place of danger*"—not just nearby.[4] Prosser, *Trespassing Children,* 47 Calif. L.Rev. at 448. The gasoline was clearly the source of danger here, and therefore the "place of danger" was inside the locked shed where the gasoline was located. It was undisputed that appellants had no knowledge of children ever trespassing in the shed or on the property immediately adjacent to the shed. Children walked on the public road past appellants' shed to go to the resort lodge and other locations, to be sure, and they were welcome in the lodge, but they had been told to stay off other areas of the property and the evidence is overwhelming that they did as they were told—until the day of the accident. All four of the surviving children testified that they had never been in the van or shed before, and none of the adults who testified had ever seen any children trespassing near the van or shed. The trial court made findings to that effect:

> 17. None of the children involved had ever played around, or trespassed in, the van or the storage building prior to June 7, 1993, and neither the Defendants, the owner of the neighboring resort, nor a neighbor who lived across the street from the storage building, had ever observed any children playing around, or trespassing in, the van or storage building prior to June 7, 1993.

There was no evidence to contradict finding number 17 and substantial evidence to support it.

We hold that element (a) of section 339 of the Restatement (Second) of Torts requiring proof of knowledge, or reason to know, that

---

4. We therefore overrule *Kukowski* to the extent that it suggests an inference that children may trespass is sufficient to satisfy the requirements of element (a) of section 339.

children are likely to trespass at the place where the dangerous condition existed is not met under these circumstances. Respondent has thus failed as a matter of law to meet the requirements of section 339, element (a), and the trial court erred in denying appellants' motion for JNOV.

We therefore reverse the court of appeals and remand to the trial court to enter judgment in accordance with this opinion.

RUSSELL A. ANDERSON, J., took no part in the consideration or decision of this case..