553 N.W.2d 435 (1996)
Michael J. HOWARD, Jr., deceased, By and Through his natural mother, Jean HOWARD; Richard Croaker, a minor, by and through his natural father, Charles D. Croaker; and Terry L. LaDuke, a minor, by and through his natural mother, Kelly Robinson, Appellants (C1-96-359), Respondents (C3-96-380),
v.
Gordon MACKENHAUSEN and Karen Mackenhausen, individually and as owners and operators of Sah Kah Tay Resort, defendants and third-party plaintiffs, Respondents,
v.
Duane Lee McFARLAND, third-party defendant, Respondent (C1-96-359), Appellant (C3-96-380),
Charles Dean Croaker, third-party defendant, Appellant (C1-96-359), Respondent (C3-96-380).
Nos. C1-96-359, C3-96-380.
Court of Appeals of Minnesota.
August 20, 1996.
Review Denied October 29, 1996.
*436 Michael D. Doshan, Fredric A. Bremseth, Thomas W. Geng, Doshan & Bremseth, Wayzata, for Michael J. Howard, Richard Croaker and Terry LaDuke.
Anne Meredith-Will, Meredith-Will Law Office, Bemidji, for Charles Dean Croaker.
Eric J. Magnuson, Mark A. Solheim, Glen M. Goldman, Jeanne Unger, Rider, Bennett, Eagan & Arundel, LLP, Minneapolis, for Duane Lee McFarland.
*437 Charles R. Powell, Powell & Powell, Bemidji, for Respondents Gordon Mackenhausen and Karen Mackenhausen.
Considered and decided by HUSPENI, P.J., TOUSSAINT, C.J., and FOLEY, J.

OPINION
DANIEL F. FOLEY, Judge.[*]
This is an appeal from a grant of summary judgment for owners of property on which five children were trespassing when two of them were injured and a third died. The children claim that a highly dangerous artificial condition on the property caused the death and injuries, which resulted from an explosion set by one of the children with gasoline that he had allegedly stolen from a boat stored in a shed on the property. Because we conclude that there are genuine issues of material fact that are sufficient to preclude summary judgment, we reverse.

FACTS
This action resulted from an explosion that occurred on the property of the Sah Kah Tay Resort, a business owned and operated by Gordon and Karen Mackenhausen since mid-August 1991. The resort consists of approximately five acres of land alongside a lake.
The Mackenhausens operate a small retail store in a lodge on their resort. At one time, their customers included four children who would occasionally purchase food and play video games at the lodge: Michael Howard, Terry LaDuke, Richard Croaker and his brother Charles Croaker. The Mackenhausens did not allow the children to explore any place on the resort other than the lodge.
Also situated on the resort property is a pole building, a shed in which two boats were stored during the summer season. The Mackenhausens and a man who rented the shed for the boats kept the doors to the pole building locked except when opening it to move the boats. Underneath one door to the shed was a hole, approximately 14 to 16 inches in diameter. The Mackenhausens were aware of the hole from the time they purchased the resort. During the off-season, Gordon Mackenhausen would cover the hole with a plank to keep animals out of the building.
Sometime during the fall of 1992, the Mackenhausens placed an inoperative van next to the pole building. In early May 1993, an unidentified vandal broke one of the van windows. The Mackenhausens did not repair the window after the vandalism incident and continued to leave the van next to the pole building.
A hill slopes down toward the lodge from the pole building to the west, and obscures the view of the pole building from the lodge. A lake borders the lodge to the east. Karen Mackenhausen observed that the Croaker brothers, Michael Howard, and Terry LaDuke, would generally approach the lodge from the west and would head back up the hill when leaving the lodge. On more than one occasion Gordon Mackenhausen had seen LaDuke riding a bicycle along a path leading to a wooded area slightly to the west of the pole building.
On June 7, 1993, the four boys, who were then between the ages of three and eight and one-half, went to the lodge with a fifth boy, Duane Lee McFarland, who was then approximately ten years old. Upon arriving at the lodge, they discovered that it was closed for the day. The group then walked over to the van parked next to the pole shed. At McFarland's suggestion, the five boys entered the van through an open back door.
McFarland briefly left the four boys in the van and went into the pole shed alone, emerging shortly thereafter with a jug. Once inside the van again, McFarland poured some liquid from the jug into a bottle held by Richard Croaker. McFarland then took the bottle back from Richard. Richard claims that he thought the liquid was water, even as McFarland was pouring it. LaDuke also *438 claims not to have known at that time that the substance was gasoline.
After pouring the liquid, McFarland rolled up a piece of paper and placed it into the bottle. He then set the bottle down and lit the protruding piece of paper. He may have told the boys that the bottle might explode, and they all backed away from it, but stayed inside of the van. The bottle then exploded in flames. McFarland, LaDuke, and the Croaker brothers escaped from the van, although LaDuke and Richard Croaker sustained burns on their hands and faces. Michael Howard did not survive the explosion.
Upon examining the scene after the incident, Gordon Mackenhausen and the man who rented the pole building determined that a plastic jug of gasoline was missing from one of the boats in the shed. The renter had earlier removed a different gas can from the boat and stored it in a cabin.
Richard Croaker, LaDuke, and Howard, by their parents, subsequently commenced this action against the Mackenhausens. The Mackenhausens then filed a third-party complaint against McFarland and Charles Croaker. The district court dismissed the action on the Mackenhausens' motion for summary judgment. This appeal followed.

ISSUE
Do genuine issues of material fact exist regarding the presence of an artificial condition on land that was highly dangerous to trespassing children?

ANALYSIS
On appeal from a grant of summary judgment, we review (1) whether there are any genuine issues of material fact, and (2) whether the lower court erred in applying the law. State by Cooper v. French, 460 N.W.2d 2, 4 (Minn.1990). The evidence is viewed in the light most favorable to the party against whom summary judgment was granted. Fabio v. Bellomo, 504 N.W.2d 758, 761 (Minn.1993).
To recover against a property owner for negligently maintaining an artificial condition on land and causing harm to trespassing children, the children must prove that
(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children, because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.
Restatement (Second) of Torts § 339 (1965), quoted in Szyplinski v. Midwest Mobile Home Supply Co., 308 Minn. 152, 155, 241 N.W.2d 306, 309 (1976). The district court concluded that insufficient evidence existed to create fact questions with respect to the first two of these five elements. We disagree and address each element in turn.
A plaintiff may satisfy the first requirement under the Restatement by demonstrating that children sufficiently frequented the vicinity so as to have placed the landowners on notice that children were likely to trespass in the location where the allegedly dangerous condition existed. See Kukowski v. William Miller Scrap Iron & Metal Co., 353 N.W.2d 638, 642-43 (Minn.App.1984) (affirming jury verdict for child injured on crane in industrial park when record contained "evidence that children frequently biked and fished in the vicinity"). The location on which we focus our inquiry is the area of the pole building and the parked van.
While the Mackenhausens never actually saw children trespassing inside the building or inside the van, we conclude that the record contains sufficient evidence to create a jury question as to whether, by June 1993, the Mackenhausens had reason to know that *439 children were likely to trespass in the area. First, Karen Mackenhausen had noticed that when Terry LaDuke, Michael Howard, Charles Croaker, and Richard Croaker visited the lodge at the resort, they customarily traveled on a road that ran along the north side of the pole building. The children would have likely needed to pass the pole building in order to return to their homes. Second, Gordon Mackenhausen had observed LaDuke riding a bicycle along a path near the pole building on more than one occasion. Third, since August 1991, Gordon Mackenhausen had known there was a hole under the pole building door large enough for a child to crawl through. Finally, in early May 1993, the Mackenhausens learned that an unidentified trespasser had vandalized their van that had been parked next to the pole building. Viewing the evidence in a light most favorable to the nonmoving parties, we conclude that this combination of factors presents a genuine issue of material fact with respect to the first element of the Restatement rule.
The second requirement under the rule from the Restatement raises an underlying issue of foreseeability. Szyplinski, 308 Minn. at 156, 241 N.W.2d at 309 (affirming jury verdict against store owners for negligence in display of lift used to raise and lower snowmobiles). Given the choice of resolving such a question on summary judgment or submitting it to a jury, "generally the better rule is to submit the issue of foreseeability to the jury." Id. We conclude that the district court should have done so in this case.
Viewed in the light most favorable to the parties against whom summary judgment was granted, the evidence raises a genuine issue of material fact as to whether the Mackenhausens had reason to know of conditions in the pole building area that presented an unreasonable risk of serious harm to children. In particular, the record demonstrates that the Mackenhausens rented the pole building for the storage of two motorboats, but did not instruct the renter to store the gasoline for the boats in a more secure facility. Yet the Mackenhausens were aware of the approximately 15-inch hole under the pole building door, and they stored their own gasoline elsewhere on the resort. They both acknowledged that gasoline could be a dangerous substance in the hands of children.
Section 339(b) of the Restatement reflects the concept that "[a] condition may be peculiarly dangerous to children because of their tendency to intermeddle with things which are notoriously attractive to them." Restatement (Second) of Torts § 339 cmt. k (1965); see also Weber v. St. Anthony Falls Water Power Co., 214 Minn. 1, 5-6, 7 N.W.2d 339, 342 (Minn.1942) (reinstating jury verdict for trespassing child injured on loose pile of lumber, where dangerous condition was one with which child was "likely to meddle"). In view of this principle, we find sufficient evidence to create a jury question whether the Mackenhausens had reason to know of the risk to children from the conditions on their property.
The district court did not address the remaining three requirements of the Restatement rule in its decision, and we will discuss them only briefly here. The third of the five elements requires that the children have not realized the risk of coming within the area of the dangerous condition. Restatement (Second) of Torts § 339(c) (1965). Michael Howard, the youngest of the five children, was three years old at the time of the explosion. Because of his relative youth, a jury might conclude that Howard satisfied this requirement. Richard Croaker and Terry LaDuke, the two surviving children who were injured in the explosion, have stated that they did not know that the substance that Duane McFarland retrieved from the pole shed was gasoline. Such testimony, absent evidence to the contrary, creates a genuine issue of material fact with respect to the children's appreciation of the risks involved in their conduct on the Mackenhausens' property on June 7, 1993.
The fourth element under section 339 of the Restatement requires a balancing of the utility to the owner of maintaining the allegedly dangerous condition, and the burden of eliminating the danger, against the risk that the condition posed to children. The allegedly dangerous conditions here include the hole under the pole building and the gasoline *440 stored inside the building. The Mackenhausens do not contend that the hole provided them with any utility, although it might be argued that storage of the gasoline provided the boat owner with some degree of convenience. A jury might find that the burden of eliminating these alleged dangers was light. We conclude that these circumstances were adequate for the purposes of creating a genuine issue of material fact on the fourth factor under the Restatement.
Finally, a landowner will not be liable under the analysis of section 339 of the Restatement unless he "fails to exercise reasonable care to eliminate the danger." A "warning" may be sufficient under some circumstances to satisfy this requirement. Restatement (Second) of Torts § 339 cmt. o (1965). Here, the Mackenhausens did not attempt to fill in the hole underneath the pole building door until after the explosion; they did not specifically warn the children against going into the pole building or the parked van; and they did not instruct the man who rented the building to store the gasoline in a secure manner. These facts were sufficient to create a fact question on the fifth element of the Restatement rule.

DECISION
Because genuine issues of material fact exist with respect to all five elements of the cause of action against the Mackenhausens, we hold that the district court erroneously granted their motion for summary judgment.
Reversed and remanded.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.